UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

TRAVIS WOODS,

                          Plaintiff,

v.                                             6:22-CV-0628
                                             (GTS/MJK)
CITY OF ROME; and NEW YORK STATE
CANAL CORPORATION,

                          Defendants.
_____

APPEARANCES:                            OF COUNSEL:

BIZER & DeREUS                    ANDREW D. BIZER, ESQ.
   Counsel for Plaintiff
3319 St. Claude Avenue
New Orleans, LA 70117

LAW FIRM OF KEVIN G. MARTIN         KEVIN MARTIN, ESQ.
   Counsel for Defendant City of Rome
1600 Genesee St.
Utica, NY 13502

HON. LETITIA A. JAMES             JENNIFER J. CORCORAN, ESQ.
Attorney General for the State of New York   WILLIAM A. SCOTT, ESQ.
   Counsel for NYS Canal Corporation      Assistants Attorney General
The Capitol
Albany, NY 12224

GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

     Currently before the Court, in this civil rights action filed by Travis Woods ("Plaintiff")

against the City of Rome ("Defendant City") and the New York State Canal Corporation

("Defendant Canal Corporation"), are the following two motions: (1) Plaintiff's motion for

summary judgment; and (2) Defendant Canal Corporation's cross-motion for summary

judgment.   (Dkt. Nos. 38, 58.)   For the reasons set forth below, Plaintiff's motion for summary

judgment is denied, and Defendant Canal Corporation's cross-motion for summary judgment is

granted in part and denied in part.

## I.    RELEVANT BACKGROUND

### A.    Plaintiff's Amended Complaint

Generally, in his Amended Complaint, Plaintiff, who is wheelchair bound, alleges that on

two occasions (specifically, on or about May 9, 2022, and June 8, 2022) he visited a marked

fishing site on the Mohawk River/Barge Canal in Rome, New York, wanting to fish from its

fishing pier, but was precluded from doing so based on numerous architectural and other

physical mobility-related barriers there (specifically, in the gravel parking lot, the uneven fishing

pier, and the gravel-and-dirt steeply sloped path from the parking lot to the fishing pier).   (*See

generally* Dkt. No. 11 [Plf.'s Am. Compl.].)

Generally, based on these factual allegations, Plaintiff asserts two claims against

Defendants: (1) a claim that Defendants violated Plaintiff's right to be free from discrimination

based on his disability under Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131

et seq. ("Americans with Disabilities Act" or "ADA"), by refusing to remove and/or modify

certain architectural barriers that prevent Plaintiff from accessing and using a fishing pier in a

public park owned by Defendant Canal Corporation and operated by Defendant City of Rome on

the Mohawk River/Barge Canal in Rome, New York; and (2) a claim that Defendants violated

Plaintiff's right to be free from discrimination based on his handicap under Section 504 of the

Rehabilitation Act of 1973, 29 U.S.C. § 794, et seq. ("Rehabilitation Act"), by engaging in the

same conduct.   (*Id*.)

As relief of its claims, Plaintiff seeks a declaratory judgment, a permanent injunction, monetary damages (including nominal damages), and attorneys' fees.   (Id.)

Familiarity with the requested relief, the claims and the factual allegations supporting those claims in Plaintiff's Amended Complaint is assumed in this Decision and Order, which is intended primarily for the review of the parties, who have demonstrated an adequate understanding of those factual allegations in their memoranda of law.   (*Id*.)

## B.   Statements of Material Facts

### 1.   Undisputed Statement of Material Facts on Plaintiff's Motion for Summary Judgment

Generally, the following facts have been asserted and supported with accurate record citations by Plaintiff in his Statement of Material Facts and admitted (or denied without a supporting record citation) by the other parties in their Responses thereto.   (*Compare* Dkt. No. 38, Attach. 2 [Plf.'s Statement of Facts] *with* Dkt. No. 55 [Def. City's Response] *and* Dkt. No. 58. Attach. 3 [Def. Canal Corp.'s Response].)

<u>Defendant City's Permit to Use Property</u>

1.   Pursuant to a Real Estate Permit issued by Defendant Canal Corporation to Defendant City on or about Jun 19, 1995, Defendant City obtained a "Permit to use and occupy [the Property] for the purpose of development of a parklike area of 14.5 acres for 1,700 lineal feet along the Canal and maintenance of recreational facilities."[1]

---

[1]   The Court is persuaded by Defendant City's denial that the evidence cited by Plaintiff in support of this fact establishes the existence of a *lease* instead of a real estate *permit*.   (Dkt. No. 55, at ¶ 2.)

2.      To be clear, the New York State Canal Corporation owns the Property and has issued a permit to the City of Rome to use the Property as "a parklike area" for "recreational facilities."[2]

Plaintiff

3.      Plaintiff is a T-4 paraplegic due to a gunshot wound to his back.[3]

4.      The bullet is still lodged in his spinal cord to this day.

5.      Plaintiff cannot walk or stand, and he uses a wheelchair for mobility.[4]

6.      Plaintiff lives eighteen (18) miles from the Property.

7.      Plaintiff travels to the City of Rome, New York, to go shopping because he enjoys visiting the Marshall's in Rome.[5]

---

[2]     Again, the Court is persuaded by Defendant City's denial that the evidence cited by Plaintiff in support of this fact establishes that the Property is currently being used as "a parklike area" for "recreational facilities."  (Dkt. No. 55, at ¶ 3.)  Although that fact may be established by other record evidence, it is not established by this 1995 permit.   The Court notes that it has not come across that other record evidence in the course of its ordinary review of the record, and it has no duty to *sua sponte* scour the record the record for such evidence.

[3]     Although the Court did not find this fact established by pages 9 and 10 of Plaintiff's deposition transcript as cited by him in his Statement of Facts (which transcript was improperly omitted from his supporting motion papers), the Court did find this fact partially established by page 16 of that transcript, and further established by Paragraph 2 of Plaintiff's affidavit.  (Dkt. No. 56, at 16; Dkt. No. 38, Attach. 4, at ¶ 2.)

[4]     Part of the fact originally asserted by Plaintiff in Paragraph 4 of his Statement of Facts repeats a fact asserted in Paragraph 1 of his Statement of Material Facts, and the other part is not established by the record evidenced cited by Plaintiff (i.e., Paragraph 2 of his affidavit).  (Dkt. No. 38, Attach. 2, at ¶ 4.)   However, because an analogous fact is established by Paragraph 4 of Plaintiff's affidavit, and because that analogous fact is asserted in Paragraph 6 of his Statement of Facts, the Court has inserted that analogous fact here and deleted Plaintiff's proposed Paragraph 6 as redundant.   (Dkt. No. 38, Attach. 4, at ¶ 4; Dkt. No. 38, Attach. 2, at ¶ 6.)

[5]     The Court rejects Defendant City's denial of "knowledge or information sufficient to form a belief" here (as elsewhere in its responses) as insufficient to create a genuine dispute of

8.      In addition, Plaintiff and his partner Katherine Cirasuolo enjoy visiting the outdoors.

9.      However, generally, the public parks in Plaintiff's hometown of the City of Utica, New York, are not fully accessible to wheelchair users.[6]

10.     As a result, Plaintiff and Ms. Cirasuolo frequently go to Rome to visit Bellamy Harbor Park, because it is a rare public park in the area that is flat and accessible.

11.     Despite that he is not a particularly knowledgeable or experienced fisherman, Plaintiff likes to go fishing with Ms. Cirasuolo and her father Sonny Cirasuolo.[7]

12.     In late 2021, Plaintiff visited the Property to go fishing.[8]

---

material fact on a motion for summary judgment.   *See Genger v. Genger*, 663 F. App'x 44, 49 n.4 (2d Cir. 2016) (summary order) (noting that a statement that one "ha[d] no recollection" of a fact "does not constitute a denial"); *F.D.I.C. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 205 F.3d 66, 75 (2d Cir. 2000) ("[V]ague denials and memory lapses . . . do not create genuine issues of material fact."); *Davis v. City of Syracuse*, 12-CV-0276, 2015 WL 1413362, at *2 (N.D.N.Y. Mar. 27, 2015) ("On a motion for summary judgment, denials of fact that are based on a lack of personal knowledge, mere information or belief, and/or inadmissible evidence are insufficient to create a genuine dispute."); *N.Y.S. Teamsters Conference Pension and Ret. Fund v. Doren Ave. Assoc., Inc.*, 321 F. Supp. 2d 435, 438 (N.D.N.Y. 2004) ("Of the 45 paragraphs in the Fund's response to this statement, 21 are conclusory denials, 16 are denied for lack of sufficient information, and none are accompanied by a record citation. Thus, per Local Rule 7.1(a)(3), the factual allegations in defendants' statement of material facts may be deemed admitted.").

[6]      The Court rejects Plaintiff's use of the adjective "systematically" in his originally asserted fact to describe the accessibility of the public parks as a legal conclusion and/or unsupported by the record evidence cited (which uses the phrase "fully accessible" to describe the City of Utica's aspirational goal).   (*See* https://www.cityofutica.com/newsroom/press-releases/2022/park-accessibility-improvements [last accessed May 22, 2024].)

[7]      (*Compare* Dkt. No. 38, Attach. 4, at ¶ 9 [Plf.'s Affid.] *with* Dkt. No. 56, at 36-37, 39-41, 43-25, 49 [Plf.'s Depo. Tr.].)

[8]      The Court rejects Defendant City's attempt to controvert the above-stated fact (which is supported by Paragraph 10 of Plaintiff's Affidavit) by implicitly challenging Plaintiff's credibility due to his lack of knowledge or experience as a fisherman.   (Dkt. No. 55, at ¶ 13.) *See Desia v. GE Life & Annuity Assurance Co.*, 350 F. App'x 542, 545 (2d Cir. 2009) ("This

13.     Although he was excited to see that the Property had a flat surface by which he could fish, he was disappointed that the Property contained no available parking spaces marked for disabled persons and lacked a route by which he could access the fishing area.[9]

14.     In April of 2022, Plaintiff returned to the Property to go fishing with Ms. Cairsuolo, hoping that the Property had been improved.   It had not been.

15.     Unlike able-bodied fishermen, Plaintiff cannot pull over to the side of the road and walk to the water to go fishing (when walking to the water is necessary to do so).

16.     Plaintiff requires a flat accessible route to get to the water along with a flat area in which to fish.

17.     Plaintiff observed that there exists a flat surface at the Property on which to fish, but that there was no route (other than a surface covered by crushed gravel) by which his wheelchair could access the flat fishing area.[10]

---

general attack on Stewart's competence, even if credited, provides no evidence . . . . Accordingly, we uphold the award of summary judgment in favor of defendants."); *Island Software and Computer Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 261 (2d Cir. 2005) ("Broad, conclusory attacks on the credibility of a witness will not, by themselves, present questions of material fact."); *McCullough v. Wyandanch Union Free Sch. Dist.*, 187 F.3d 272, 280 (2d Cir. 1999) (explaining that a plaintiff does not create a genuine issue of fact merely by "impugning [a witness'] honesty"); *Estate of D.B. v. Thousand Island Cent. Sch. Dist.*, 327 F. Supp. 3d 477, 490 n.12 (N.D.N.Y. 2018) ("A non-movant may not create a genuine issue of material fact by simply challenging the credibility of a declarant.").

[9]     The Court must reject Plaintiff's use of the term "disabled parking" in his originally asserted fact as a legal conclusion and/or vague and ambiguous.   The Court finds that the above-stated fact is the most that is reasonably supported by the cited record evidence.   (Dkt. No. 38, Attach. 4, at ¶ 11.)

[10]     (*Compare* Dkt. No. 38, Attach. 4, at ¶ 15 [Plf.'s Affid.] *with* Dkt. No. 55, Attach. 6, at ¶¶ 8-10 [Guiliano Affid.] *and* Dkt. No. 56, Attach. 7 [Ex. B to Guiliano Affid.] *and* Dkt. No. 56, Attach. 8 [Ex. C to Guiliano Affid.].)

18.     Plaintiff also observed that there were no available parking spaces marked for disabled persons, and that the parking area was located on a surface covered by crushed gravel, which his wheelchair has difficulty navigating.[11]

19.     Plaintiff desires to return to the Property in the near future to engage in recreation activities.

20.     Plaintiff wished to fish at the Property because it contains a dedicated fishing pier where he can safely fish.[12]

21.     But for the aforementioned features at the Property, Plaintiff would fish at the Property, and believes he would "regularly" do so (despite the fact that, during his deposition, he could not name the specific places he fished in the last five years other than Lock 20).[13]

<u>Expert Opinion of Josh Safdie</u>

22.     To prove his claims under Title II of the ADA and the Rehabilitation Act of 1973, Plaintiff commissioned an expert to inspect the Property and issue a report as to the physical

---

[11]     The Court must reject Plaintiff's use of the term "designated-accessible parking" in his originally asserted fact as a legal conclusion and/or vague and ambiguous.   The Court finds that the above-stated fact is the most that is reasonably supported by the cited record evidence.   (Dkt. No. 38, Attach. 4, at ¶ 16; Dkt. No. 55, Attach. 6, at ¶¶ 8-10 [Guiliano Affid.]; Dkt. No. 56, Attach. 7 [Ex. B to Guiliano Affid.]; Dkt. No. 56, Attach. 8 [Ex. C to Guiliano Affid.].)

[12]     Setting aside the fact that Defendant City cites no admissible record evidence in support of its repeated assertion that "[a] fisherman should be able to cast sufficient distances so as to be able to fish from a distance from the shoreline" (Dkt. No. 55, at ¶¶ 21, 16), whether or not that assertion is true has no bearing on whether or not Plaintiff wished to fish at the Property because there is a dedicated fishing pier where he can safely fish" (which fact is supported by Paragraph 18 of Plaintiff's Affidavit).   For example, Plaintiff does not assert in this paragraph that the Property is the only place he can safely fish.

[13]     (*Compare* Dkt. No. 38, Attach. 4, at ¶ 19 [Plf.'s Affid.] *with* Dkt. No. 56, at 41-42 [Plf.'s Depo. Tr.].)

barriers. On June 22, 2023, at the direction of architect Josh Safdie, AIA, access planner Mr. Mark Simonin performed an accessibility audit of the Property.

23.     Using the materials from that inspection, Mr. Safdie issued a six-page report on the Property.   In the report, Mr. Safdie identified what he opines are nine (9) "barriers" to access.[14]

24.     For example, in the parking area, Mr. Safdie opined that there were zero (0) designated "accessible parking spaces" for purposes of 2010 ADA Standard ("ADAS") § 208.1 (to the extent that the 2010 regulations apply under the circumstances).[15]

25.     In the picnic area, Mr. Safdie opined that there was no "accessible route" to the picnic tables for purposes of 2010 ADAS § 206.2.2, and there was no compliant "knee clearance" space at the picnic tables for purposes of 2010 ADAS § 902.2 (again to the extent that the 2010 regulations apply under the circumstances).[16]

26.     With regard to the floating boarding pier, Mr. Safdie opined that there was no

---

[14]     (Dkt. No. 38, Attach. 5, at 2-4 [Ex. C to Plf.'s Statement of Facts].)   The Court accepts Exhibit C even though it is improperly attached as an exhibit to Plaintiff's Statement of Facts and not the declaration or affidavit of a person with personal knowledge of its production.

[15]     (Dkt. No. 38, Attach. 5, at 2 [Ex. C to Plf.'s Statement of Facts].)   The Court rejects Plaintiff's assertion "[a]s a result, there is no designated area for wheelchair users to park and safely exit their vehicle" (in Paragraph 26 of his Statement of Facts) because that assertion is not supported by Mr. Safdie's six-page report (which provides only opinions and, in any event, does not state that fact).

[16]     (Dkt. No. 38, Attach. 5, at 2 [Ex. C to Plf.'s Statement of Facts].)   The Court rejects Plaintiff's assertion "[a]s a result, there is no firm route to the picnic tables and there is no accessible picnic tables" (in Paragraph 27 of his Statement of Facts) because that assertion is not supported by Mr. Safdie's six-page report (which provides only opinions and, in any event, does not state that fact).   The Court notes that it is undisputed that the picnic area is owned, operated and maintained by Hamilton College.   (Dkt. No. 55, Attach. 6, at ¶¶ 3-4 [Guiliano Affid.]; Dkt. No. 55, Attach. 3, at ¶ 6 [Feeney Affid.].)

"accessible route" to the floating boarding pier for purposes of 2010 ADAS § 206.1 (again to the extent that the 2010 regulations apply under the circumstances), because (he opined) the route (1) consisted of a grass and gravel surface, (2) ran at a 22% slope, and (3) ended in an 8-½ change in level at the start of the boarding pier gangway.[17]

27.     With regard to the boarding pier gangway, Mr. Safdie opined that the running slope of the gangway surface is greater than 8.3% at the entry area for purposes of 2010 ADAS § 403.4 (again to the extent that the 2010 regulations apply under the circumstances).[18]

28.     Plaintiff is afraid that, if he were to attempt to traverse this area of the Property (i.e., the route to the boarding pier gangway), he would fall out of his wheelchair and potentially wind up in the water.[19]

---

[17]     (Dkt. No. 38, Attach. 5, at 3 [Ex. C to Plf.'s Statement of Facts].)   The Court rejects Plaintiff's assertion "[a]dditionally, the floating pier is inaccessible, as the accessible route to the pier is inaccessible, and the boarding gangway is inaccessible" (in Paragraph 27 of his Statement of Facts) because that assertion is not supported by Mr. Safdie's six-page report (which provides only opinions and, in any event, does not state that fact).   The Court also rejects Plaintiff's assertion "[i]n one location the route has a 22% sloped surface—more than double the permitted 8.3% permitted sloped surface" (in Paragraph 28 of his Statement of Facts) because that assertion is not supported by Mr. Safdie's six-page report (which provides only opinions and, in any event, does not state that fact), and because that assertion is contradicted by admissible record evidence adduced by Defendant City.   (Dkt. No. 55, Attach. 6, at ¶¶ 15-16, 18-19 [Guiliano Aff.].)   Finally, the Court notes that it is undisputed that the floating boarding pier and gangway are owned, operated and maintained by Hamilton College.   (Dkt. No. 55, Attach. 6, at ¶¶ 3-4 [Guiliano Aff.]; Dkt. No. 55, Attach. 3, at ¶ 6 [Feeney Aff.]; Dkt. No. 38, Attach. 5, at 1 [Ex. C to Plf.'s Statement of Facts stating, "A local resident with whom Mr. Simonin spoke on site indicated that the floating boarding pier and the 1-story maintenance/ storage building were operated by a local collegiate rowing team and not the City, but there was no signage or other information prohibiting use of this boarding pier by the general public."].)

[18]     (Dkt. No. 38, Attach. 5, at 3 [Ex. C to Plf.'s Statement of Facts].)

[19]     Because the Court is persuaded that a genuine dispute of material fact has been created by the admissible record evidence cited by Defendant City in its Response to Plaintiff's Statement of Facts, the Court has changed the phrase "this 22% slope" in Plaintiff's originally

29.     With regard to the boat launch ramp, Mr. Safdie opined that the ramp has a 3.5-inch change in level for purposes of 2010 ADAS § 303.2 (again to the extent that the 2010 regulations apply under the circumstances).[20]

30.     With regard to the route to the fishing platform, Mr. Safdie opined that there was no "accessible route" to the fishing platform for purposes of 2010 ADAS § 206.2.2 (again to the extent that the 2010 regulations apply under the circumstances).[21]

31.     With regard to the fishing platform itself, Mr. Safdie opined that the platform has openings in its surface greater than .5 inch for purposes of 2010 ADAS § 302.3, and slopes up to 3% in some areas for purposes of 2010 ADAS § 305.2 (again to the extent that the 2010 regulations apply under the circumstances).[22]

---

asserted fact to the phrase "this area of the Property" in the above-stated fact.   (*Compare* Dkt. No. 38, Attach. 4, at ¶ 20 [Plf.'s Affid.] *with* Dkt. No. 55, Attach. 6, at ¶¶ 15-16, 18-19 [Guiliano Affid.].)

[20]     (Dkt. No. 38, Attach. 5, at 3 [Ex. C to Plf.'s Statement of Facts].)   The Court notes that it is undisputed that Defendant City constructed the boat ramp and floating boat launch in 1988 and/or 1989, and that the boat ramp and floating boat launch have not been modified or altered since then.   (Dkt. No. 55, Attach. 6, at ¶¶ 7, 20 [Guiliano Affid.]; Dkt. No. 56, Attach. 6 [Ex. A to Guiliano Affid.]; Dkt. No. 55, Attach. 3, at ¶¶ 9-10, 13 [Feeney Affid.].)   It is also undisputed that a permit had been issued to the New York State Department of Environmental Conservation on February 18, 1986, for the construction and maintenance of a concrete boat launch ramp and the installation of a floating dock at that location.   (Dkt. No. 55, Attach. 3, at ¶ 8 [Feeney Affid.]; Dkt. No. 55, Attach. 5 [Ex. B to Feeney Affid..]; Dkt. No. 58, Attach. 6 [Ex. A to McCarthy Decl.].)

[21]     (Dkt. No. 38, Attach. 5, at 4 [Ex. C to Plf.'s Statement of Facts].)   The Court notes that it is undisputed that Defendant City has no record of building the fishing platform, that it does not advertise the fishing site, and that the site appears to be advertised by (and to have been built by) the New York State Department of Transportation.   (Dkt. No. 55, Attach. 6, at ¶ 8 [Guiliano Affid.]; Dkt. No. 55, Attach. 3, at ¶¶ 4, 5, 13 [Feeney Affid.]; Dkt. No. 55, Attach. 2, at ¶ 9 [Martin Affirm.].)

[22]     (Dkt. No. 38, Attach. 5, at 4 [Ex. C to Plf.'s Statement of Facts].)   The Court notes that Defendant City has adduced admissible record evidence that no such openings greater than .5

32.     Through his counsel, Plaintiff propounded the expert report of architect Josh

Safdie, AIA on June 30, 2023, in accordance with the Court's Text Order of May 16, 2023.

### 2.     Undisputed Statement of Material Facts on Defendant Canal Corporation's Cross-Motion for Summary Judgment

Generally, the following facts have been asserted and supported with accurate record

citations by Defendant Canal Corporation in its Statement of Material Facts and admitted (or

denied without a supporting record citation) by the other parties in their Responses thereto.

(*Compare* Dkt. No. 58, Attach. 2 [Def. Canal Corp.'s Statement of Facts] *with* Dkt. No. 64,

Attach. 2 [Def. City's Response] *and* Dkt. No. 71, Attach. 1 [Plf.'s Response].)[23]

1.     Defendant Canal Corporation owns several parcels of real property located on the

north side of the Erie Canal near the intersection of Muck Road and South Madison Street in the

City of Rome, New York. On or about June 19, 1995, Defendant Canal Corporation issued a

Real Estate Permit for Use and Occupancy of New York State Canal Corporation Property (the

"Permit") to Defendant City with regard to three (3) of these parcels. The stated purpose of the

Permit was the "development a parklike area of 14.5 acres for 1,700 lineal feet along the canal

---

inch exist, and no such slopes up to 3% exist.   (Dkt. No. 55, Attach. 6, at ¶¶ 14-15 [Guiliano Affid.].) Finally, the Court rejects Plaintiff's assertion "[t]he fishing platform itself has large, impermissible gaps and an impermissibly sloped surface" (in Paragraph 32 of his Statement of Facts) because that assertion is not supported by Mr. Safdie's six-page report (which provides only opinions and, in any event, does not state that fact), and because (again) that assertion is contradicted by admissible record evidence adduced by Defendant City.   (Dkt. No. 55, Attach. 6, at ¶¶ 14-15 [Guiliano Affid.].)

[23]     By Text Order filed April 19, 2024, the Court denied Defendant Canal Corporation's letter-motion to strike Defendant City's opposition to Defendant Canal Corporation's cross-motion for summary judgment.   (Dkt. No. 72.)   In that Text Order, the Court found that Defendants are adverse to each other on the issues presented by Defendant Canal Corporation's cross-motion for summary judgment.   (*Id.*)

and maintenance of recreational facilities." Also pursuant to the Permit, Defendant City

expressly agreed "not to make any alterations, excavations, modifications, or improvements of

any kind without written permission from the New York State Canal Corporation."[24]

2.     On or about February, 1986 the New York State Department of Transportation

Waterways Maintenance Subdivision issued a Permit for Use and Occupancy of New York State

Canal Lands to the New York State Department of Environmental Conservation (the "DEC

Permit") for constructing and maintaining a concrete boat launch ramp, installing a floating

dock, and developing a parking area and picnic area in the same vicinity as the property utilized

by Defendant City.[25]

---

[24]     (Dkt. No. 58, Attach. 5, at ¶ 3 [McCarthy Decl.]; Dkt. No. 58, Attach. 6 [Ex. A to McCarthy Decl.].)   Although Defendant Canal Corporation also asserts in this paragraph a fact regarding facilities "authorized under a previously issued work permit," that "previously issued work permit" was never attached to the Permit as part of Exhibit A (and is not even clearly identified in the Permit).   (Dkt. No. 58, Attach. 6 [Ex. A to McCarthy Decl.].)

[25]     The Court notes that it rejects Defendant Canal Corporation's proffered undisputed fact which states as follows: "Prior to the issuance of the Permit and the DEC Permit, the property was vacant and unimproved. Any and all facilities, parking lots, recreational areas and the like currently on the property and subject of this lawsuit were developed, constructed and maintained by either the City of Rome or DEC. NYSCC had no part or involvement in design or construction any of the above improvements to the property."   (Dkt. No. 58, Attach. 2, at ¶ 3.) The evidence cited in support of this fact is Paragraph 5 of Attorney McCarthy's Declaration. (*Id.*)   Of course, personal knowledge must be demonstrated.   Fed. R. Civ. P. 56(c)(4); Fed. R. Evid. 601; *Patterson v. Cty. of Oneida*, 375 F.3d 206, 219 (2d Cir. 2004); *Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986); *Beyah v. Coughlin*, 789 F.2d 986, 989 (2d Cir. 1986).   Here, although Mr. McCarthy declares that his assertions are based on "personal knowledge [and] experience," his declaration does not demonstrate that he possesses personal knowledge or experience of the fact asserted.   (*See generally* Dkt. No. 58, Attach. 5 [McCarthy Decl.].)   Indeed, as admitted by Defendant Canal Corporation, Mr. McCarthy was working as an associate at Bond, Schoeneck & King in Syracuse in 1995.   (Dkt. No. 75, at 3.)   Moreover, although Mr. McCarthy asserts that his assertions are also based on a "review of NYSCC records in support of Defendant NYSCC's Cross-Motion for Summary Judgment," none of the records adduced by Defendant Canal Corporation evidence the fact asserted (nor has he even identified any such records).   (*See generally* Dkt. No. 58, Attach. 5-7.)

3.      Paragraph five (5) of the Permit states as follows, in part: "The applicant [i.e.,

Defendant City] is responsible for (a) all property repairs, improvements, and maintenance; (b)

compliance with applicable Federal, State and local laws, ordinances, codes and rules and

regulations . . . ."[26]

4.      Paragraph six (6) of the Permit states as follows, in part: "The applicant agrees . . .

to indemnify and to hold harmless the People of the State of New York, the New York State

Canal Corporation and the New York State Thruway Authority from any loss or claim by reason

of any use or misuse of the permit area . . . ."[27]

5.      Finally, paragraph eleven (11) of the Permit states as follows: "In accordance with

all applicable statutes, the applicant agrees not to discriminate because of race, creed, color, sex,

national origin, age, disability, or marital status against anyone who uses the permit area or gains

access to the permit area if the premises are used for public accommodation or as a public

service."[28]

6.      Meanwhile, paragraph three (3) of the DEC Permit states as follows, in part:

"Permittee [i.e., the DEC] is responsible for any repairs, improvements or maintenance work of

any kind on the property. . . ."[29]

7.      In addition, paragraph six (6) of the DEC Permit states as follows: "It is

understood by permittee that no liability of any kind shall attach to or rest upon the State for any

---

[26]      (Dkt. No. 58, Attach. 6, at 1 [Ex. A to McCarthy Decl.].)

[27]      (Dkt. No. 58, Attach. 6, at 1 [Ex. A to McCarthy Decl.].)

[28]      (Dkt. No. 58, Attach. 6, at 2 [Ex. A to McCarthy Decl.].)

[29]      (Dkt. No. 58, Attach. 7, at 1 [Ex. B to McCarthy Decl.].)

damage on account of the granting or revocation of any permit. Permittee therefore undertakes and agrees to indemnify and save harmless the State, its officers or employees from any and all liabilities, claims, demands and recoveries arising out of use and occupancy of the property."[30]

8.     Plaintiff never notified Defendant Canal Corporation of the alleged issues at the Property, or requested that Defendant Canal Corporation rectify those alleged issues before Plaintiff commenced this action.

### C.     Parties' Arguments on Their Pending Motions

#### 1.     Plaintiff's Motion for Summary Judgment

##### a.     Plaintiff's Memorandum of Law-in Chief

Generally, in support of his motion for summary judgment, Plaintiff assert two arguments.   (*See generally* Dkt. No. 38, Attach. 1 [Plf.'s Memo. of Law].)   First, Plaintiff argues, he has standing to pursue his claims in this action for three reasons: (a) he has reasonably shown a past injury to him under Title II of the ADA and the Rehabilitation Act; (b) he has

---

[30]     (Dkt. No. 58, Attach. 7, at 1 [Ex. B to McCarthy Decl.].)   The Court notes that it rejects Defendant Canal Corporation's proffered undisputed fact which states as follows: "Any and all deficiencies and/or violations alleged by Plaintiff with regard to the fishing pier, parking lot and related areas of the subject property were solely constructed by, maintained by and under the control of either the City of Rome or DEC at all times."   (Dkt. No. 58, Attach. 2, at ¶ 8.)   The evidence cited in support of this fact is Paragraph 10 of Attorney McCarthy's Declaration.   (Id.)   Three alternative problems exist with this citation.   First, the declarant has not demonstrated personal knowledge for the reasons stated above in note 25 of this Decision and Order.   Second, the factual assertion flies in the face of (1) the admissible record evidence establishing that certain improvements to the Property were made by Hamilton College and/or the New York State Department of Transportation (*see, supra,* notes 16 and 17 of this Decision and Order), and (2) the last provision in paragraph 6 of the Permit stating that Defendant City is "not to make any alterations, excavations, modifications, or improvements of any kind without written permission from the New York State Canal Corporation" (Dkt. No. 58, Attach. 6, at 1 [Ex. A to McCarthy Decl.]).   Third, the factual assertion is more akin to a legal conclusion (addressing one of the ultimate issues in dispute in this action).

reasonably shown that Defendants' violation of the ADA and failure to accommodate his disability will continue until the program is brought into compliance with the ADA; and (c) he has reasonably shown that he intends to return to the Property in the near future.   (*Id*. at 7-13.)[31]

Second, Plaintiff argues, Defendants are violating Title VII of the ADA as a matter of law for four reasons: (a) based on the current record, it is undisputed that he is a qualified individual with a disability; (b) it is also undisputed that both Defendant Canal Corporation and Defendant City are subject to the ADA; (c) it is also undisputed that he has experienced discrimination by reason of his disability; and (d) it is also undisputed that Defendants are violating the program access standard of the ADA.   (*Id*. at 13-19.)

### b.      Defendant City's Opposition Memoranda of Law

Generally, in Defendant City's opposition to Plaintiff's motion for summary judgment, it argues three alternative arguments.   (*See generally* Dkt. No. 55, Attach. 1 [Def. City's Opp'n Memo. of Law].)   First, Defendant City argues, genuine disputes of material fact preclude the entry of summary judgment in Plaintiff's favor for each of three alternative reasons: (a) as an initial matter, based on Plaintiff's deposition testimony regarding his dubious experience as a fisherman (as well as his refusal to answer questions about his vexatiously history of having filed 30 similar ADA actions in the Northern District), admissible evidence exists from which a rational jury could find that he is in fact a fisherman who has has been injured in the past (through the existence of barriers hampering his ability to access or enjoy an ADA-covered accommodation) and/or intends to return to the Property in the near future; (b) in any event,

---

[31]      The Court notes that page citations in this Decision and Order refer to the screen numbers on the Court's Case Management / Electronic Case Filing ("CM/ECF") System, not to the page numbers stated on the documents contained therein.

based on the current record, a genuine dispute of material fact exists regarding whether Defendant City has a sufficient interest in and/or operation of the Property (as a mere licensor to build and install a boat ramp, a floating boat launch, parking lot, and access road, so long as it does not interfere with the New York State Department of Environmental Conservation's use of the Property as a fishing access site) to be held liable for the ADA violations claimed by Plaintiff; and (c) in any event, the report of Plaintiff's expert is filled with so many demonstrated inaccuracies that a rational jury could disregard his testimony in its entirety and/or reject his opinion that the Property contains architectural or other barriers for purposes of the ADA. (*Id.* at 6-10.)

Second, Defendant City argues, in any event, Plaintiff lacks standing to bring the claims asserted in this action for three reasons: (a) with regard to Plaintiff's claims arising from the alleged barriers to his access of the fishing platform (as well as of the parking lot and path from the parking lot to the fishing platform), he lacks standing to bring those claims, because (based on his deposition testimony showing of his lack of experience and knowledge as a fisherman and his failure to provide copies of a fishing license) he cannot show that he is, or never has been, a fisherman, or that he even has a legal right to fish in New York State; (b) to the extent that Plaintiff's claims arise from the alleged barriers to his access of the floating boarding pier and its gangway, he lacks standing to bring those claims, because he admits that he does not own a canoe, kayak or small craft, and therefore he has no reason to use the floating boarding pier or its gangway; and (c) to the extent that Plaintiff's claims arise from the alleged barriers to his access of the boat ramp and floating boat launch (the only portion of the Property for which Defendant City is actually responsible under its Permit), he lacks standing to bring those claims, because he

admits that he does not own or operate a boat, and he therefore has no use for those facilities. (*Id*. at 10-15.)

Third, Defendant City argues, in any event, it did not deny Plaintiff access to its programs or activities for each of three alternative reasons: (a) as a threshold matter, based on Defendant City's independent measurements of the slopes, gaps, and size of the parking area, a rational jury could find that the fishing platform, boat ramp, floating boat launch, and parking area all meet the 2010 ADA standards; (b) even if those areas do not all meet the 2010 ADA standards, those standards do not apply under the circumstances; and (c) in any event, Defendant City is not a proper defendant in this case because (as a mere licensor, not a lessor) it has no ability to make the changes sought by Plaintiff as relief for his claims.   (*Id*. at 15-22.)

In support of Defendant City's first alternative reason that it did not deny Plaintiff access to its programs or activities (i.e., because the 2010 ADA standards do not apply), Defendant City argues as follows: (i) because the fishing platform was built by the New York State Department of Transportation in or about 1988 (five years before the ADA's "new construction" provisions became effective in 1993, and indeed two years before the ADA was signed into law in 1990), and because there have been no "alternations" to that platform since then (pursuant to the governing regulations), the only ADA accessibility standards that could possibly apply are the "readily achievable" provisions, but Plaintiff has not articulated any plausible proposal for barrier removal (the costs of which facially do not clearly exceed its benefits), and thus may not base a claim on those provisions; (ii) a similar argument exists regarding the boat ramp and floating boat launch which were completed by Defendant City in 1989 and have not been altered

since then;[32] and (iii) with regard to the large parking lot (which could accommodate up to 30 trucks and trailers), Plaintiff fails to establish any need for parking spaces designated for disabled persons, because he fails to adduce evidence showing (or even allege) that, on the dates he visited the Property, he could not find a parking space close to the fishing platform (which holds only six fisherman incidentally).   (*Id*.)

### c.    Defendant Canal Corporation's Response

Defendant Canal Corporation's response to Plaintiff's motion does *not* contain a memorandum of law that opposes Plaintiff's arguments regarding standing and/or argues that (at the very least) genuine disputes of material fact preclude the entry of summary judgment in Plaintiff's favor on his ADA claims.   (*See generally* Dkt. No. 58, Attach. 1 [Def. Canal Corp.'s Cross-Motion Memo. of Law].)   Instead, that response requests the entry of summary judgment in favor of Defendant Canal Corporation on both Plaintiff's ADA claims and his Rehabilitation Act claims.   (*Id*.)   As a result, the Court will not summarize those arguments in detail here, but will do so below in Part I.C.2.a. of this Decision and Order.

### d.    Plaintiff's Reply Memorandum of Law

Generally in his reply, Plaintiff asserts four arguments.   (*See generally* Dkt. No. 69, Attach. 2 [Plf.'s Reply Memo. of Law].)   First, Plaintiff argues, although Defendants each attempt to pass off blame onto others, both are obligated to comply with the ADA (Defendant City as the sole current permittee/operator of the property and Defendant Canal Corporation as the owner of it).   (*Id*. at 2-3.)   In support of this argument, Plaintiff argues as follows: (a) the

---

[32]     To this argument, Defendant City adds that the 1991 ADA accessibility standards, which would likely apply over the 2010 ADA standards, do not even did not contain any specific requirements for boat ramps.   (Dkt. No. 55, Attach. 1, at 18-19.)

record contains no evidence that the DEC continued to occupy or otherwise operate any portion

of the 14.5 acres of "parklike area" after 1995; (b) although Defendant City argues that the

Permit authorizes it to do nothing with the fishing platform other that clean it, in fact the Permit

holds Defendant City responsible for all Property improvements in compliance with all

applicable federal laws; and (c) under 28 C.F.R. § Pt. 35, App. B, Defendant Canal Corporation

must ensure that any services, programs or activities on the Property operated under contract by a

private entity comply with federal laws.

Second, Plaintiff argues, because Defendant City confuses Title II of the ADA (which

applies to "public entities") with Title III of the ADA (which applies to "private entities"),

Defendant City is incorrect that the "readily achievable" standard is applicable to this action, and

that the 2010 ADA Accessibility Guidelines are not applicable to this action..  (*Id*. at 4-7.)

More specifically, Plaintiff argues, the "readily achievable" standard applies only to pre-1990

facilities operated by private entities; for pre-1990 facilities operated by public entities, the

regulations require "program access" (i.e., that the program be readily accessible and usable by

individuals with disabilities when the program is viewed in its entity).  (*Id*.)  Furthermore,

Plaintiff argues, the 2010 Guidelines apply because each barrier identified by Plaintiff's expert is

a "building block" supporting a finding that the portion of the Property is inaccessible; and, even

though the 1991 Guidelines did not contain any specific requirements for boat ramps, many of

the barriers at issue—parking, walkways, ramps—are based on accessibility requirements that

can be found in both the 1991 and 2020 Guidelines.  (*Id*.)

Third, Plaintiff argues, Defendant City's argument that Plaintiff lacks standing because

he is (purportedly) a liar (and thus is lying about his desire to fish at the Property) is incorrect for

two reasons: (a) Plaintiff's ADA litigation history in this District over the past six years is not evidence of any mendacity but is the realization of the promise of the ADA (and may not serve as a ground for impeachment pursuant to the cases that Defendant City cites); and (b) Plaintiff's sworn statement of an intent to fish at the Property (and possession of valid fishing licenses "off and on" over the years) provides him with standing, and the attempt of Defendant City's counsel to serve as a fishing expert and human lie detector is improper.   (*Id*. at 7-11.)

Fourth, Plaintiff argues, Defendant City's argument that there are no barriers to access is incorrect for five reasons: (a) regardless of the size of the parking area, it must still (but does not) contain a ground surface that is "stable, firm, and slip-resistant" and spaces that guard against the problem of a wheelchair user being unable to get into their vehicle (due to another vehicle having parked to close to the wheelchair user's vehicle); (b) the inclines and declines in the path from the parking area to the ramp, and from the ramp to the fishing pier, create genuine disputes of a material fact for the jury regarding the accessibility of the route from the parking area to the fishing pier; (c) Defendant City adduces no evidence controverting the opinion of Plaintiff's expert regarding the impermissible slope in the path from the parking area to the boarding pier; (d) although a genuine dispute may exist regarding gaps and changes in slope in the fishing platform surface constitute a barrier, no genuine dispute exists that the route from the parking area to the fishing platform constitutes a barrier, because of Plaintiff's uncontroverted deposition testimony on the subject; and (e) Defendant City adduces no evidence controverting the evidence adduced by Plaintiff establishing the lack of an accessible route to the picnic tables and the lack of knee and toe clearance for wheelchair users of those picnic tables (and the Court should allow Plaintiff to obtain relief regarding the picnic tables, despite that Plaintiff's Complaint and

Amended Complaint contain no factual allegations regarding the picnic tables, in order to avoid the risk of "piecemeal compliance" and promote judicial efficiency).   (*Id*. at 11-14.)

### 2.   Defendant Canal Corporation's Cross-Motion for Summary Judgment

#### a.   Defendant Canal Corporation's Memorandum of Law-in Chief

Generally, in support of its cross-motion for summary judgment, Defendant Canal Corporation asserts three alternative arguments.   (*See generally* Dkt. No. 58, Attach. 1 [Def. Canal Corp.'s Cross-Motion Memo. of Law].)   First, Defendant Canal Corporation argues, Plaintiff cannot prove his ADA and Rehabilitation Act claims against Defendant Canal Corporation for four reasons: (a) it is conduct, not identity, that gives rise to liability under the ADA; (b) Defendant Canal Corporation neither constructed nor maintains the Property; (c) rather, the challenged areas of the Property were constructed and maintained by Defendant City or or a dismissed party (specifically, the New York State Department of Environmental Conservation, which had been granted a permit by the New York State Department of Transportation), who each agreed to assume responsibility for all improvements, indemnify Defendant Canal Corporation for any loss or claim, and (in the case of Defendant City) comply with federal law; and (d) Plaintiff conceded in his deposition testimony that he never provided notice to Defendant Canal Corporation of the alleged barriers to access.   (*Id*. at 5-7.)

Second, Defendant Canal Corporation argues, in any event, to the extent that Plaintiff requests compensatory damages from Defendant Canal Corporation on either of his claims, Defendant Canal Corporation is entitled to summary judgment on that request, because (a) in *Cummings v. Premier Rehab Keller, PLLC*, 142 S. Ct. 1562, 1576 (2022), the Supreme Court held that compensatory damages are not available under the antidiscrimination provisions of the

21

Rehabilitation Act, and (b) although *Cummings* was limited to claims under the Rehabilitation Act, compensatory damages are unavailable under Title II of the ADA for the same reasons as stated in *Cummings*, as recognized in *Matagrano v. N.Y. State Dep't of Corr. & Cmty. Supervision*, 19-CV-0763, 2023 WL 5932943, at *7 (N.D.N.Y. Sept. 12, 2023) (Sannes, J.). (*Id.*)

Third, Defendant Canal Corporation argues, in any event, to the extent that Plaintiff requests compensatory damages from Defendant Canal Corporation on his ADA claim, that request is barred by the Eleventh Amendment for the following four reasons: (a) Defendant Canal Corporation is clearly considered a state agency protected by the Eleventh Amendment; (b) to determine whether Congress validly abrogated Defendant Canal Corporation's Eleventh Amendment immunity with regard to Plaintiff's ADA claim, the Court must apply either the "discriminatory animus or ill will" test set forth in *Garcia v. State Univ. of N.Y. Health Scis. Ctr.*, 280 F. 3d 98, 111 (2d Cir. 2001), or the "congruence and proportionality" test set forth in *City of Boerne v. Flores*, 521 U.S. 507, 520 (1997); (c) abrogation is not appropriate under the "discriminatory animus or ill will" test, because Plaintiff has not alleged, and cannot prove, that he was intentionally denied the ability to use the fishing site or denied accommodations at the fishing site because of discriminatory animus or ill will based on disability; and (d) abrogation is not appropriate under the "congruence and proportionality" test, because Congress's prophylactic remedies must represent a "congruent and proportional" response to the constitutional right being enforced and the record of constitutional violations adduced by Congress. (*Id.*)

**b.     Defendant City's Opposition Memorandum of Law**

Generally, in Defendant City's response to Defendant Canal Corporation's cross-motion for summary judgment, Defendant City argues that the Court should not grant summary judgment for Defendant Canal Corporation based on any ruling that Defendant City is solely liable for any judgment against Defendant Canal Corporation because of its duty to indemnify or contribute to Defendant Canal Corporation.   (*See generally* Dkt. No. 64 [Def. City's Opp'n Memo. of Law].)   In support of this general argument, Defendant City asserts three specific arguments.   (*Id*.)

First, Defendant City argues, Defendant Canal Corporation's cross-motion is improper to the extent that it requests a ruling that Defendant City is solely liable for any judgment against Defendant Canal Corporation based on the indemnification or contribution provisions in the Permit for five reasons: (a) the request for such a ruling is effectively a request for relief against Defendant City; (b) that request is contained in a cross-motion, which Local Rule 7.1(c) defines as a "request for relief that competes with the relief requested by another party against the cross-moving party"; (c) however, Defendant City never requested relief against Defendant Canal Corporation; (d) if Defendant Canal Corporation seeks an order of this Court finding Defendant City liable for indemnification or contribution under the Permit, Defendant Canal Corporation should have moved for that relief directly against Defendant City, not buried that request in a cross-motion against Plaintiff; and (e) in any event, because Defendant Canal Corporation's Answer to the Amended Complaint never asserted a cross-claim for indemnification or contribution against Defendant City, together with a third-party claim against the New York State Department of Environmental Conservation (which was once a party to this action), there is no proper basis for a finding that Defendant City is the true party in interest in this case.   (*Id*. at

5-6.)

Second, relatedly, Defendant City argues, summary judgment on the ground of indemnification or contribution under the Permit is improper for two reasons: (a) because there was no cross-claim asserted by Defendant Canal Corporation against Defendant City for indemnification or contribution, Defendant City has not had a full and fair opportunity to conduct discovery on the issue of indemnification or contribution (including adducing any testimony as to the intent of the parties in entering into the Permit, which is ambiguous at best), and Defendant Canal Corporation has waived that cross-claim; and (b) in any event, the success of Defendant Canal Corporation's argument regarding indemnification and contribution depends on its factual assertion that the Property was vacant and unimproved before the issuance of the Permit and DEC Permit, which is both unsupported by Defendant Canal Corporation's cited record evidence (i.e., the Declaration of Attorney McCarthy) and controverted by Defendant City's cited record evidence (i.e., the Declaration of Public Works Commissioner Guiliano). (*Id.* at 6-9)

Third, again relatedly, Defendant City argues, the Permit is ambiguous at best (presenting genuine disputes of material fact that preclude an entry of summary judgment for Defendant Canal Corporation) for ten reasons: (a) when the Permit was signed in 1995, there existed no accessibility standards relating to docks or piers, which did not appear until 2010; (b) the Permit is expressly for "use and occupancy," not the construction of any facilities or operation of any programs or services that would be governed by the ADA (as further evidenced by the fact that no facilities have been constructed since the boat ramp and aluminum dock were installed in 1989; (c) the Permit expressly provides that Defendant the City may not make "any alterations,

excavations, modifications, or improvements of any kind without written permission from the New York State Canal Corporation"; (d) the Permit expressly covers only the land owned by Defendant Canal Corporation, and does not cover the waterway (which remains the province of the Canal Corporation) where the fishing pier is located (having been construed by the New York State Department of Transportation before the Permit); (e) the very specific language of the indemnification provision (which is limited to "any loss or claim by reason of any use or misuse of the permit area.") evidences no agreement that Defendant City should have to indemnify Defendant Canal Corporation for any ADA claim against it; (f) the Permit's antidiscrimination provision conspicuously mentions only discrimination, not accessibility, despite the fact that Title II of the ADA was in effect in 1995, suggesting that the parties did not intend any post-1995 changes in Title II of the ADA (regarding accessibility) to apply; (g) even setting aside the fact that Defendant cannot make any changes whatsoever to the Property without the approval of Defendant Canal Corporation, the Permit can be canceled by Defendant City on 30 days notice, making Defendant City not a proper party to any injunction requiring the parties to make the Property accessible (or contribute to the cost of such a remedy); (h) because the Permit references "work permit 94-3-5(4)" but does not attach that work permit, it is unclear what the intent of the Permit was, and how a violation of the ADA should be handled under the Permit (especially with regard to the fishing pier, which appears to have been built by the Department of Transportation); (i) pursuant to a "Co-Operation Agreement" between Defendant City and the New York State Department of Environmental Conservation ("DEC"), the DEC and not Defendant City has a permit to operate the fishing access site (leaving Defendant City obligated under the Permit only to empty the garbage on the fishing platform and to make sure the parking

lot and access road are open to the public); and (j) because the Permit expressly refers to "recreational facilities authorized under work permit 94-3-5 (4)," the Permit suggests that there were in fact facilities that were present on the Proper before 1995 (contradicting Attorney McCarthy's declaration that the Property was not improved).   (*Id*. at 9-13.)

### c.     Plaintiff's Reply Memorandum of Law

Generally, in Plaintiff's response to Defendant Canal Corporation's cross-motion for summary judgment, Plaintiff asserts four arguments.   (*See generally* Dkt. No. 71 [Plf. Opp'n Memo. of Law].)   First, Plaintiff argues, the Court should reject Defendant Canal Corporation's argument that it is conduct (as an operator), not identity (as an owner), that gives rise to liability under the ADA, because under Title II of the ADA, both the owner and the operator can be liable for noncompliance (and the sole case cited by Defendant Canal Corporation is distinguishable in that it regards a Title III claim against a private entity).   (*Id*. at 2-3.)

Second, Plaintiff argues, the Court should reject Defendant Canal Corporation's argument that the Court should dismiss in their entirety Plaintiff's requests for compensatory damages against Defendant Canal Corporation on both of his claims, because (a) Plaintiff can pursue nominal damages and expectation damages under the Rehabilitation Act, and (b) as Plaintiff argues below, Plaintiff agrees to dismiss his claim for damages under Title II of the ADA against Defendant Canal Corporation (and thus the Court should not wade into the thorny issue of whether emotional distress damages are available under Title II of the ADA).   (*Id*. at 4-7.)

Third, Plaintiff argues, while he agrees to the dismissal of ADA claim for damages against Defendant Canal Corporation based on the Eleventh Amendment, the Court should not

dismiss his claim against Defendant Canal Corporation under the Rehabilitation Act (to which

the Eleventh Amendment does not apply, because Defendant Canal Corporation does not dispute

that it receives federal funds).   (*Id*. at 7-8.)

Fourth, and finally, Plaintiff argues, the Court should reject Defendant Canal

Corporation's argument that he never provided notice to it of the alleged barriers to access,

because (a) he has effectively waived that argument by asserting it in only one sentence instead

of adequately briefing it, (b) in any event, the ADA does not require pre-suit notice, and (c)

although notice may be relevant to proving that Defendant Canal Corporation acted with

deliberate indifference, Plaintiff sent a reasonable-accommodation request (including a notice of

his disability) to the New York Department of Environmental Conservation (thus effectively

giving notice to New York State and its department, Defendant Canal Corporation).   (*Id*. at 8-

10.)

## II.   RELEVANT LEGAL STANDARDS

### A.   Legal Standard Governing a Motion for Summary Judgment

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that

there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as

a matter of law."   Fed. R. Civ. P. 56(a).   A dispute of fact is "genuine" if "the [record] evidence

is such that a reasonable jury could return a verdict for the [non-movant]."   *Anderson v. Liberty

Lobby, Inc.*, 477 U.S. 242, 248 (1986).[33]   As for the materiality requirement, a dispute of fact is

---

[33]      As a result, "[c]onclusory allegations, conjecture and speculation . . . are insufficient to
create a genuine issue of fact."   *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998)
[citation omitted].   As the Supreme Court has explained, "[The non-movant] must do more than
simply show that there is some metaphysical doubt as to the material facts."   *Matsushita Elec.
Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

"material" if it "might affect the outcome of the suit under the governing law.... Factual disputes

that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248, 106 S. Ct.

2505.

In determining whether a genuine issue of material fact exists, the Court must resolve all

ambiguities and draw all reasonable inferences against the movant. *Anderson*, 477 U.S. at 255,

106 S. Ct. 2505. In addition, "[the movant] bears the initial responsibility of informing the

district court of the basis for its motion, and identifying those portions of the ... [record] which it

believes demonstrate[s] the absence of any genuine issue of material fact." *Celotex v. Catrett*,

477 U.S. 317, 323-24 (1986). However, when the movant has met its initial burden, the non-

movant must come forward with specific facts showing a genuine issue of material fact for trial.

Fed. R. Civ. P. 56(a), (c), (e).

Implied in the above-stated burden-shifting standard is the fact that, where a non-movant

willfully fails to respond to a motion for summary judgment, a district court has no duty to

perform an independent review of the record to find proof of a factual dispute. *Cusamano v.

Sobek*, 604 F. Supp.2d 416, 426 & n.2 (N.D.N.Y. 209) (Suddaby, J.) (citing cases). Of course,

when a non-movant willfully fails to respond to a motion for summary judgment, "[t]he fact that

there has been no [such] response ... does not ... [by itself] mean that the motion is to be granted

automatically. *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). Rather, as indicated

above, the Court must assure itself that, based on the undisputed material facts, the law indeed

warrants judgment for the movant. *Champion*, 76 F.3d at 486; *Allen v. Comprehensive

Analytical Group, Inc.*, 140 F. Supp. 2d 229, 232 (N.D.N.Y. 2001) (Scullin, C.J.); N.D.N.Y. L.R.

7.1(b)(3). What the non-movant's failure to respond to the motion does is lighten the movant's

burden.

For these reasons, this Court has often enforced Local Rule 56.1 (previously Local Rule 7.1[a][3]) by deeming facts set forth in a movant's statement of material facts to be admitted, where (1) those facts are supported by evidence in the record, and (2) the non-movant has willfully failed to properly respond to that statement.[34]

Similarly, in this District, where a non-movant has willfully failed to respond to a movant's properly filed and facially meritorious memorandum of law, the non-movant is deemed to have "consented" to the legal arguments contained in that memorandum of law under Local Rule 7.1(b)(3).[35]   Stated another way, when a non-movant fails to oppose a legal argument asserted by a movant, the movant may succeed on the argument by showing that the argument possess facial merit, which has appropriately been characterized as a "modest" burden.   *See* N.D.N.Y. L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determined that the moving party has met its burden to demonstrate entitlement to the relief requested therein...."); *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1, n.1 (N.D.N.Y. Oct. 30, 2009) (Suddaby, J.) (collecting cases); *Este-Green v. Astrue*, 09-CV-0722, 2009 WL 2473509, at

---

[34]     Among other things, Local Rule 56.1(b) requires that the non-movant file a response to the movant's Statement of Material Facts, which admits or denies each of the movant's factual assertions in matching numbered paragraphs, and supports any denials with a specific citation to the record where the factual issue arises.   N.D.N.Y. L. R. 56.1(b).

[35]     *See*, *e.g.*, *Beers v. GMC*, 97-CV-0482, 1999 U.S. Dist. LEXIS 12285, at *27-31 (N.D.N.Y. March 17, 1999) (McCurn, J.) (deeming plaintiff's failure, in his opposition papers, to oppose several arguments by defendants in their motion for summary judgment as consent by plaintiff to the granting of summary judgment for defendants with regard to the claims that the arguments regarded, under Local Rule 7.1[b][3]; *Devito v. Smithkline Beecham Corp.*, 02-CV-0745, 2004 WL 3691343, at *3 (N.D.N.Y. Nov. 29, 2004) (McCurn, J.) (deeming plaintiff's failure to respond to "aspect" of defendant's motion to exclude expert testimony as "a concession by plaintiff that the court should exclude [the expert's] testimony" on that ground).

*2 & n.3 (N.D.N.Y. Aug. 7, 2009) (Suddaby, J.) (collecting cases).

**B.      Legal Standards Governing Plaintiff's Claims**

Because the parties to this action have demonstrated, in their memoranda of law, an accurate understanding of the relevant points of law contained in the legal standards governing Plaintiff's claims in this action, the Court will not recite, in their entirety, those legal standards in this Decision and Order, which is intended primarily for review by the parties.

**III.   ANALYSIS**

Liberally construed, Plaintiff's Amended Complaint – when viewed together with his motion for summary judgment – attempts to assert claims under the ADA and Rehabilitation Act against both Defendants with regard to five aspects of the Property: (1) the parking area; (2) the fishing pier (and path from the parking area to the fishing pier); (3) the floating boarding pier (and path from the parking area to the floating boarding pier); (4) the picnic tables (and path from the parking area to the picnic tables); and (5) the concrete boat launch ramp and aluminum boarding pier (and path from the parking area to the concrete boat launch ramp and aluminum boarding pier).   As a result, each pending motion for summary judgment is analyzed through that perspective.

**A.      Whether Plaintiff Should Be Awarded Judgment as a Matter of Law on His ADA Claim Against Both Defendants**

**1.      ADA Claim Against Both Defendants Regarding Parking Area**

Liberally construed, Plaintiff's Amended Complaint complains about two aspects of the parking area on the Property: (1) the alleged lack of accessible parking spaces; and (2) the alleged lack of stability, firmness and slip-resistance of the ground surface and the alleges changes in level in the ground surface.   (*See* Dkt. No. 11, at ¶¶ 30, 36 [Plf.'s Am. Compl.,

complaining about "the lack of accessible parking spaces," "the uneven surface made of loose gravel" and the "large potholes" in the "parking lot" or "parking area," as well as the lack of "accessible-designated parking spaces, signs, or access aisles"].)

As an initial matter, the Court finds that, with regard to the alleged lack of stability, firmness and slip-resistance of the ground surface and the alleges changes in level in the ground surface, a genuine dispute of material fact exists due to Public Works Commissioner Guiliano's photograph of the parking area, and his sworn assertions regarding its level nature and the fact that part of it is paved asphalt.   (Dkt. No. 55, Attach. 6, at ¶ 9; Dkt. No. 56, Attach. 8.)

Turning to the alleged lack of accessible parking spaces, the Court begins by observing that, based on the current record, there appears to be some merit to Plaintiff's argument that, under the ADA,[36] the parking area may lack at least one required marked accessible parking space having an adjacent access aisle.   *See, e.g.,* 2010 ADA Standard § 502.2 ("Car parking spaces shall be 96 inches (2440 mm) wide minimum and van parking spaces shall be 132 inches (3350 mm) wide minimum, shall be marked to define the width, and shall have an adjacent access aisle complying with 502.3.").[37]

---

[36]     The Court notes that it generally accepts Plaintiff's argument that the ADA applies to the parking area under the circumstances.   (Dkt. No. 69, Attach. 2, at 4-7 [Plf.'s Reply Memo. of Law].)

[37]     The Court notes that, although there may be some surface appeal to Defendant City's argument that the parking area is so large (as compared to the needs of its possible patrons and/or its advertised use) that Plaintiff cannot ever establish a claim that he is unable to park there, on closer examination it appears that – in and of itself – the large size of the parking area may actually cut against such an argument, requiring more marked accessible parking spaces.   *See* 2010 ADA Standard § 208.2 ("Parking spaces complying with 502 shall be provided in accordance with Table 208.2 . . . [requiring, e.g., 1 accessible parking spaces for a parking facility having 1 to 25 total parking spaces, 2 accessible parking spaces for a parking facility having 26 to 50 parking spaces, etc.] . . . .").

However, two issues prevent the Court from awarding a judgment as a matter of law to Plaintiff on his ADA claim with regard to this aspect of the parking area.   First, this case presents the rare circumstance in which, apparently sensing the questionable nature of his standing to assert this claim, Plaintiff has based his motion for summary judgment on, in part, the purported unequivocal nature of that standing.   (Dkt. No. 38, Attach. 1, at 7-13 [Plf.'s Memo. of Law].)   For example, he has argued that no admissible record evidence exists controverting the fact that he possesses standing to assert this claim.   (*See, e.g.,* Dkt. No. 38, Attach. 1, at 11 ["In contrast, Defendants have no evidence to dispute Mr. Woods sworn desire to return [to the Property]."].)   Moreover, in opposing his motion, Defendant City has challenged Plaintiff's standing.   (Dkt. No. 55, Attach. 1, at 10-15 [Def. City's Opp'n Memo. of Law].)

Granted, generally, in order to establish standing, a plaintiff need not make a futile attempt to use a parking space when the problem posed is obvious to him.[38]   However, conspicuously absent from Plaintiff's otherwise detailed Amended Complaint and Affidavit are any allegation or sworn statement that, on the two days he visited the parking area, there was in fact not an available parking space, located on the shortest possible route to the fishing pier, where he could have parked far enough away from an edge of the lot to effectively give himself an adjacent access aisle (meeting the distance requirement set forth in 2010 ADA Standard § 502.3) yet close enough to the edge to prevent one of the (seemingly few) other visitors to the

---

[38]      Here, the particular problem posed appears to be the lack of a marked access aisle to prevent another vehicle from blocking Plaintiff's return to his vehicle.   (Dkt. No. 69, Attach. 2, at 12 [Plf.'s Reply Memo. of Law, arguing, "Access aisles are needed to allow wheelchair users to have space to transfer to and from their vehicles. Without access aisles, another vehicle could park too close to a wheelchair user's vehicle, causing a wheelchair user to be unable to get in or out of their vehicle"].)

area from parking an automobile (or more likely a truck) in that adjacent access aisle.[39]   In other

words, the Court has no reason to believe that, on the two days that Plaintiff visited the parking

area, it looked other than it does in the photograph taken by Commissioner Guiliano.   (Dkt. No.

55, Attach. 6, at ¶ 9 [Guiliano Affid.]; Dkt. No. 56, Attach. 8 [depicting a 22,000 square-foot lot

containing two trucks in the distance].)   Simply stated, based on the current record, the Court

finds that a genuine dispute of material fact exists regarding whether Plaintiff visited the parking

area on a day when it actually lacked accessible parking.[40]   This finding alone serves as a

ground to deny Plaintiff's motion (and require an evidentiary hearing on the issue of standing

before trial).   *See, e.g., Raritan Baykeeper, Inc. v. NL Indus., Inc.*, 09-CV-4117, 2016 WL

7381715, at *7 (D. N.J. July 29, 2016) ("[T]he Court denies Plaintiffs' motion for summary

judgment on Article III standing and shall hold an evidentiary hearing to resolve the genuine

disputes of material fact relevant to the determination of Plaintiffs' standing.").

      The Court interjects that, although it may appear unfair, unreasonable and/or inefficient

---

[39]    (*See* Dkt. No. 11, at ¶¶ 30, 36 [Plf.'s Am. Compl., alleging that there is a "lack of accessible parking spaces" and that "[t]here are not accessible-designated parking spaces"]; Dkt. No. 38, Attach. 4, at ¶¶ 10-12, 16 [Plf.'s Affid., asserting that "In late 2021, I visited the Property to go fishing. . . . While I was excited to see that the Property had a flat surface by which I could fish, I was disappointed that the Property contained no disabled parking . . . .   In April of 2022, I returned to the Property to go fishing with Ms. Cairsuolo with the hopes that the Property had been improved. It was not. . . .   I also observed that there was no designated-accessible parking, and that the parking area was located on gravel, which causes me to have difficulty navigating in my wheelchair."].)

[40]    *Cf. Straw v. City of South Bend*, 16-CV-0342, 2016 WL 6996047, at *4 (N.D. Ind. Nov. 30, 2016) ("[M]erely taking photographs on Memorial Day (when the government buildings were closed) for the sake of documenting the status of the parking spots [for ADA compliance] clearly does not grant Straw Article III standing—as he does not allege that in attempting to park, South Bend failed to accommodate his disability such that he suffered a personal injury or encountered barriers in violation of the ADA.").

to require Plaintiff to go through the motion of visiting the parking area on a day when it actually

lacks accessible parking, such an appearance would also arguably result from causing Defendant

City to abandon its maintenance of the park (to the detriment of all),[41] should it be found to be

the responsible party in the latest of Plaintiff's more than 30 lawsuits aimed at, as he says,

"realiz[ing]" the ADA's "promise of equal access for the disabled."   (Dkt. No. 69, Attach. 2, at

8 [Plf.'s Reply Memo. of Law].)[42]

Second, in any event, even if Plaintiff has standing to bring this claim (and there is

unquestionably a duty to improve this aspect of the parking area), it is unclear against whom

summary judgment should be awarded on this claim.   Plaintiff agrees that Defendant Canal

Corporation cannot be liable for damages an ADA violation in the parking area because of the

Eleventh Amendment.   Furthermore, it is unclear, under both the parties' agreement[43] and the

---

[41]   (Dkt. No. 64, at 11 [Def. City's Opp'n Memo. of Law, arguing that "the Permit can be
canceled by the City of Rome on 30 days notice. . . .   The City is considering whether to simply
cancel the Permit and turn over clean up and maintenance of the area back to the Canal
Corporation. In that case, the City, which cannot make any changes whatsoever to the area
without Canal Corporation approval, would not be a proper party in this case where the primary
remedy is based upon making sure the property accessible."].)

[42]   The Court notes that, although a review of its CM/ECF system confirms Defendant City's
assertion that Plaintiff has settled 26 of his 30 other ADA lawsuits in this District (the 27th
lawsuit resulting in a jury verdict against him, the 28th lawsuit resulting in summary judgment for
the defendants, and the 29th lawsuit resulting in a dismissal of the action without prejudice for
lack of standing), the Court is unable to confirm Defendant City's assertion that each of those
settlements was for $20,000.   (Dkt. No. 55, Attach. 1, at 8-19 [Def. City's Opp'n Memo. of
Law].)   As a result, the Court will defer, until any relevant motion in *limine*, analyzing whether
those prior lawsuits may be inquired into on cross-examination at trial (e.g., on the grounds that
the settlement amounts may be fairly characterized as having been for "nuisance value").

[43]   (Dkt. No. 58, Attach. 6, at 1, ¶ 6 [Ex. A to McCarthy Decl., stating that the City of Rome
agrees "not to make any alterations, excavations, modifications, or improvements of any kind
without written permission from the New York State Canal Corporation"].)

rest of the current record,[44] whether that duty can be shouldered by Defendant City without the approval of Defendant Canal Corporation or whether that duty should be shouldered by some non-party (such as New York State Department of Environmental Conservation, which was dismissed as a party from this action with prejudice on September 1, 2022).[45]

For each of these two alternative reasons, the Court denies Plaintiff's motion for summary judgment on his ADA claim against Defendant City with regard to the parking area,[46] and dismisses without prejudice his ADA claim for money damages against Defendant Canal Corporation with regard to the parking area.  *See Katz v. Donna Karan Co., L.L.C.*, 872 F.3d 114, 121 (2d Cir. 2017) ("[W]here a case is dismissed for lack of Article III standing, as here, that disposition cannot be entered with prejudice, and instead must be dismissed *without prejudice*.") (emphasis in original).

> **2.      ADA Claim Against Both Defendants Regarding Wooden Fishing Pier (and Path from Parking Area to Wooden Fishing Pier, Including Ramp)**

Liberally construed, Plaintiff's Amended Complaint complains about the slope and stability of, and openings in, both the wooden fishing pier and the ground surface from the parking area to the wooden fishing pier (including the ramp to the wooden fishing pier).  (*See*

---

[44]     The Court notes it is not even entirely clear from the current record who constructed the parking area and when.

[45]     (Dkt. Nos. 9, 13.)

[46]     With regard to Defendants' argument that Plaintiff cannot recover compensatory damages on his ADA claims, the Court is persuaded that "[a]t least some district courts have concluded that nominal damages are available under the Rehabilitation Act and ADA even though emotional distress damages are not recoverable."   *Matagrano v. N.Y. State Dep't of Corr. & Cmty. Supervision*, 19-CV-0763, 2023 WL 5932943, at *7 (N.D.N.Y. Sept. 12, 2023) (Sannes, J.).

Dkt. No. 11, at ¶¶ 28, 30, 36, 40 [complaining about his inability "to access . . . the fishing dock" or "the fishing pier" as well as the "steep drop into the water" and lack of an "accessible path to access the water"], and ¶¶ 30, 36 [complaining about the "cracked/uneven ground surface" in "the path from the parking area to the fishing pier," as well as the fact that "[t]he ramp that provides access to the fishing pier" or "the transition on to the pier" is "cracked with a large threshold"].)

For the sake of brevity, the Court will assume that Plaintiff has standing to assert an ADA claim with regard to the fishing pier and the path from the parking area to the fishing pier.[47]   In any event, two issues prevent the Court from awarding a judgment to Plaintiff as a matter of law on his ADA claim with regard to these aspects of the Property.

First, based on the current record (which Public Works Commissioner Guiliano's photograph of the fishing pier, and his sworn assertions regarding his measurements of the gaps in its decking, the slope of the pier, and the slope of the path to the pier), genuine disputes of material facts exist regarding the slope of the path and pier, the stability of the path and pier, and the openings in the pier.   (Dkt. No. 55, Attach. 6, at ¶¶ 14-16; Dkt. No. 56, Attach. 7.)

Second, in any event, even if no genuine dispute of material fact were created by Commissioner Guiliano's photograph and sworn assertions, again, it is unclear against whom summary judgment should be awarded on this claim due to the following facts: (1) Plaintiff agrees that Defendant Canal Corporation cannot be liable for an ADA violation in the fishing

---

[47]   For example, the Court is persuaded that Plaintiff has sufficiently demonstrated a concrete intention to return to the Property to fish in the near future.   Furthermore, the Court is persuaded that Plaintiff need not "risk life and limb going over excessive changes in level and slope" to establish standing.   (Dkt. No. 69, Attach. 2, at 12.)

pier (or route to the fishing pier) because of the Eleventh Amendment; (2) the Permit awarded to Defendant City expressly covers only the land owned by Defendant Canal Corporation, and does not cover the waterway where the fishing pier is located (which appears to remain the province of Defendant Canal Corporation); (3) indeed, under the parties' agreement, it does not appear that Defendant City can make improvements to the fishing pier without the approval of Defendant Canal Corporation; and (4) the New York State Department of Environmental Conservation (which, at least at one point, agreed to be "responsible for any repairs, improvements or maintenance work of any kind on the property") apparently constructed the fishing pier and advertises its use, yet was dismissed as a party from this action with prejudice on September 1, 2022.

For each of these two alternative reasons, the Court denies Plaintiff's motion for summary judgment on his ADA claim against Defendant City with regard to the fishing pier and path from the parking area to the fishing pier,[48] and dismisses without prejudice his ADA claim for money damages against Defendant Canal Corporation with regard to the fishing pier and path from the parking area to the fishing pier.   *Katz*, 872 F.3d at 121.

### 3. ADA Claim Against Both Defendants Regarding Floating Boarding Pier (and Path from Parking Area to Floating Boarding Pier)

Even when construed with the utmost of special liberality, Plaintiff's Amended Complaint contains no factual allegations plausibly suggesting an ADA claim regarding what his expert calls a "floating boarding pier"[49] which is an aspect of the Property that is distinct from

---

[48]     *See, supra,* note 46 of this Decision and Order.

[49]     (Dkt. No. 38, Attach. 5, at 1, 3 [containing two photographs of floating boarding pier and gangway].)

the previously described "fishing" pier or dock.   (*See generally* Dkt. No. 11.)   Moreover,

although Plaintiff's Amended Complaint also complains about his "access" to "the general

recreation available to non-disabled persons at the Property," because all areas of the Property

(which is a park) involve recreation, such a factual allegation does not plausibly suggest a

complaint about the floating boarding pier any more than it suggests a complaint about water

fountains, picnic tables or the concrete boat launch.   (Dkt. No. 11, at ¶ 28 ["The services that

MR. WOODS has not been able to access at the Property are . . . the general recreation available

to non-disabled persons at the Property."].)   Arguing that one's pleading provided only a few

illustrative examples of the alleged barriers is not a substitute for investigating and alleging the

grounds for an ADA claim.[50]   Finally, to the extent that Plaintiff's Amended Complaint

complains about "walkways," the Court fails to see how that vague term could plausibly suggest

the path from the parking area to the floating boarding pier when the Amended Complaint fails

to complain about the floating boarding pier.   (*Id*. [complaining about the "walkways"].)

---

[50]     *See Pickern v. Pier 1 Imports (U.S.), Inc*., 457 F.3d 963, 968-69 (9th Cir. 2006) ("In
response to the motion for summary judgment, Pickern raised issues of ADA violations that went
beyond a failure to provide a ramp. Pickern attempts to justify these new factual allegations as
falling within the original complaint under Rule 8's liberal notice pleading standard. The district
court did not err by holding that Pickern failed to provide the Appellees with adequate notice of
these new allegations. . . . In her complaint, Pickern made it clear what her claim was when she
alleged that the Store 'contains architectural barriers that make it inaccessible.' She did not,
however, provide any notice concerning the grounds upon which she based this claim. *Pickern's
complaint included lists of barriers that she now characterizes as illustrative of the kinds of
barriers a disabled person may confront*. She alleged that the Appellees' failure to remove
architectural barriers 'may include, but is not limited to' these specific barriers. However, she did
not allege that any of these barriers actually existed at the Store. *Providing a list of hypothetical
possible barriers is not a substitute for investigating and alleging the grounds for a claim*. Thus,
the complaint gave the Appellees no notice of the specific factual allegations presented for the
first time in Pickern's opposition to summary judgment.") (emphasis added).

As a result, under the circumstances, the Court finds that Plaintiff's Amended Complaint

has not stated an ADA claim with regard to these particular barriers.[51]    Furthermore, the Court is

not persuaded that Plaintiff provided Defendants with fair notice of these alleged barriers by

subsequently submitting an expert report containing a reference to them.[52]    Simply stated,

Plaintiff should have corrected this pleading deficiency in his Amended Complaint but failed to

do so.[53]    Finally, although Plaintiff encourages the Court to consider this claim in order to avoid

---

[51]    *See Hillesheim v. Holiday Stationstores, Inc.*, 953 F.3d 1059, 1061-62 (8th Cir. 2020)
("The slope of the flared sides [of curbs in a parking lot] is governed by ADAAG 406.3—which
Hillesheim does not mention in his complaint. Hillesheim's complaint does include one mention
of ADAAG '406' [which regards curb ramps] in a string citation of requirements for accessible
routes and parking spaces. Hillesheim argues that this provides sufficient notice, reasoning: 'A
curb ramp is a component of an accessible route, and a flare is a component of a curb ramp.' To
the contrary, flared sides are not a component of an accessible route [under ADAAG 402.2]. . . .
The complaint does not mention 'flared sides.' . . .   The complaint's allegations do not give
Holiday notice of any issue about the slope of the flared sides. . . . Because there was no fair
notice of the flared-sides issue, the disputed measurements are not a genuine issue of material
fact."); *Davis v. Anthony, Inc.*, 886 F.3d 674, 677 (8th Cir. 2018) ("Slope is governed by
ADAAG 502.4. Davis does not mention ADAAG 502.4 in her complaint. She raises violations
of only ADAAG 208.2, 216.5, 502.2, and 502.6. Davis says her complaint sufficiently alleges an
ADAAG 502.4 violation. She believes that the complaint's allegation that '[t]he accessible
parking spaces in the [steakhouse's] customer parking lot lacked adjacent access aisles, in
violation of ADAAG 502.2,' includes an ADAAG 502.4 violation because, according to her
brief, what 'qualifies as an access aisle is determined by reference to the [ADAAG], which
includes requirements for, inter alia, location, width, slope, and length.' Her access-aisle
allegation, however, focuses only on ADAAG 502.2, which does not mention slope. A reference
to ADAAG 502.2 does not state a plausible claim for a violation of ADAAG 502.4.").

[52]    *See Oliver v. Ralphs Grocery Co.*, 654 F.3d 903, 908 (9th Cir. 2011) ("We now turn to
Oliver's argument that the district court erred in refusing to consider the barriers that were
identified in his expert report but not alleged in his complaint. . . . Where the claim is one of
discrimination under the ADA due to the presence of architectural barriers at a place of public
accommodation, we have held that the relevant 'grounds' are the allegedly non-compliant
architectural features at the facility. . . .   Thus, in order for the complaint to provide fair notice to
the defendant, each such feature must be alleged in the complaint. . . . Oliver did not give the
defendants fair notice that the barriers listed for the first time in the expert report were grounds
for his claim of discrimination under the ADA.").

[53]    *See Pickern,* 457 F.3d at 969 ("Although the new allegations were not part of the original

39

a "piecemeal approach" to litigation, the Court finds that, under the circumstances, Plaintiff's approach (pursuant to which fair notice is inadequately given and proper discovery is inadequately conducted) is the one that would severely undermine the enforcement scheme of the ADA (as well as waste judicial resources).   In any event, the point of law cited by Plaintiff (i.e., from *Doran v. 7-Eleven,* 524 F.3d 1034 [9th Cir. 2008]) applies only to standing, not fair notice of a claim under Fed. R. Civ. P. 8 and 12(b)(6).[54]

In any event, even if the Court were to find that Plaintiff has attempted to assert this claim, he has failed to establish standing to do so, because he has neither alleged facts plausibly suggesting nor adduced admissible record evidence establishing an intent to use the floating boarding pier in the near future.   (*See generally* Dkt. No. 11; Dkt. No. 38.)   It is worth emphasizing that the undisputed purpose of the floating boarding pier is to enable members of a

---

complaint, Pickern might have proceeded by filing a timely motion to amend the complaint. However, Pickern did not amend the complaint to include more specific allegations. She also did not incorporate the 'preliminary site report' into her complaint. Instead, it appears that, many months after filing the complaint, she merely provided a 'preliminary site report' to the Appellees as part of settlement negotiations. This did not make the preliminary site report part of the record and it did not give the Appellees notice of what allegations Pickern was including in the suit. In addition, because the expert's report was not filed and served until after the discovery deadline, that report cannot be construed as notice that would prompt the Appellees to seek discovery regarding the new allegations. Thus, the district court did not err in finding that Pickern failed to provide adequate notice of the new allegations.").

[54]     *See Doran v. 7-Eleven*, 524 F.3d 1034, 1043 (9th Cir. 2008) ("[T]he enforcement scheme of Title III of the ADA would be severely undermined if we were to adopt the piecemeal approach *to standing* advocated by 7–Eleven.") (emphasis added); *Oliver*, 654 F.3d at 908 ("Oliver argues that the complaint need not give the defendant notice of every barrier for which the plaintiff seeks relief, because a disabled plaintiff who has encountered at least one barrier at a facility can sue to remove all the barriers at the facility related to his specific disability. *See Doran v. 7–Eleven*, 524 F.3d 1034, 1047 (9th Cir.2008). But Doran does not help Oliver, because it speaks only to constitutional standing; it sheds no light on what a plaintiff's complaint must include to comply with the fair notice requirement of Rule 8.").

collegiate rowing team to board sculling shells.   (Dkt. No. 55, Attach. 6, at ¶¶ 3-4 [Guiliano Affid.]; Dkt. No. 55, Attach. 3, at ¶ 6 [Feeney Affid.]; Dkt. No. 38, Attach. 5, at 1 [Ex. C to Plf.'s Statement of Facts].)   Again, Plaintiff nowhere alleges or adduces admissible record evidence of an intent to row (or fish from such an inherently unstable platform).   (*See generally* Dkt. No. 11; Dkt. No. 38.)

For each of these two alternative reasons, the Court dismisses these aspects of Plaintiff's ADA claim without prejudice.   *Katz,* 872 at 121.[55]

The Court hastens to add that, even if it were to find that Plaintiff has asserted this claim and established standing to do so, Plaintiff has acknowledged that Defendant Canal Corporation cannot be liable for damages for an ADA violation in these aspects of the Property because of the Eleventh Amendment.   Furthermore, based on the current record, no admissible evidence exists from which a reasonable fact finder could conclude that Defendant City owns, operates or even maintains the floating boarding pier.   Rather, the admissible record evidence establishes that Hamilton College (or perhaps Colgate University by now) does so.   (Dkt. No. 55, Attach. 6, at ¶¶ 3-5 [Guiliano Affid.]; Dkt. No. 55, Attach. 3, at ¶¶ 6-7 [Feeney Affid.]; Dkt. No. 38, Attach. 5, at 1 [Ex. C to Plf.'s Statement of Facts].)[56]   As a result, even if the Court were to

---

[55]     *See also Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 250 (2d Cir.1985) ("Although Judge Weinstein relied on the affidavits submitted in support of the Rule 56 motion, and thus granted summary judgment, we believe it would have been equally proper to dismiss the civil rights count for failure to state a claim, pursuant to Rule 12(b)(6)."), *cert. denied*, 484 U.S. 918 (1987); *Schwartz v. Compagnise General Transatlantique*, 405 F.2d 270, 273-74 (2d Cir. 1968) ("Where appropriate, a trial judge may dismiss for failure to state a cause of action upon motion for summary judgment.").

[56]     The Court notes that the Permit nowhere states that Defendant Canal Corporation's license to Defendant City to use and occupy the Property for the purpose of development of a parklike area is exclusive.   (*See generally* Dkt. No. 38, Attach. 3; *cf.* Dkt. No. 58, Attach. 7

reach the merits of these aspects of Plaintiff's ADA claim, the Court would (albeit after giving Plaintiff any required notice and reasonable time to respond) likely find that Defendants would be entitled to summary judgment on those aspects.   However, because this claim is dismissed without prejudice, the Court need not, and does not, render that ruling.

> **4.      ADA Claim Against Both Defendants Regarding Picnic Tables (and Path from Parking Area to Picnic Tables)**

Again, even when construed with the utmost of special liberality, Plaintiff's Amended Complaint contains no factual allegations plausibly suggesting an ADA claim regarding what his expert calls "the picnic tables" (or "two picnic tables").[57]  Although his Amended Complaint also complains about his "access" to "the general recreation available to non-disabled persons at the Property," because all areas of the Property (which is a park) involve recreation, such a factual allegation does not plausibly suggest a complaint about picnic tables any more than it does a complaint about water fountains or a concrete boat launch.   (Dkt. No. 11, at ¶ 28 ["The services that MR. WOODS has not been able to access at the Property are . . . the general recreation available to non-disabled persons at the Property."].)   Again, arguing that one's pleading provided only a few illustrative examples of the alleged barriers is not a substitute for investigating and alleging the grounds for an ADA claim.[58]   Finally, to the extent that Plaintiff's

---

[containing DEC Permit, paragraph 3 of which provides that "Permittee [i.e., the DEC] is responsible for any repairs, improvements or maintenance work of any kind on the property. . ."].)

[57]      (Dkt. No. 38, Attach. 5, at 1, 2 [containing two photographs of two picnic tables and portion of adjacent building].)

[58]      *See, supra,* note 50 of this Decision and Order.

Amended Complaint complains about "walkways," the Court fails to see how that vague term could plausibly suggest the path from the parking area to the picnic tables when the Amended Complaint fails to complain about the picnic tables.   (*Id.* [complaining about the "walkways"].)

As a result, for reasons stated above in Part III.A.3. of this Decision and Order, the Court finds that Plaintiff has not stated an ADA claim with regard to these particular barriers.   Plaintiff did not provide Defendants with fair notice of these alleged barriers by subsequently submitting an expert report containing a reference to them.   Plaintiff should have corrected this pleading deficiency in his Amended Complaint but failed to do so.   In any event, even if the Court were to find that Plaintiff has attempted to assert this claim, he has failed to establish standing to do so, because he has neither alleged facts plausibly suggesting nor adduced admissible record evidence establishing an intent to use the picnic tables in the near future.   (*See generally* Dkt. No. 11; Dkt. No. 38.)

For each of these reasons, the Court dismisses these aspects of Plaintiff's ADA claim without prejudice.   *Katz*, 872 F.3d at 121.

Finally, again, the Court adds that, even if it were to find that Plaintiff has asserted this claim and established standing to do so, Plaintiff has acknowledged that Defendant Canal Corporation cannot be liable for damages for an ADA violation in these aspects of the Property because of the Eleventh Amendment.   Furthermore, based on the current record, no admissible evidence exists from which a reasonable fact finder could conclude that Defendant City owns, operates or even maintains the picnic tables.   Rather, the admissible record evidence establishes that Hamilton College (or perhaps Colgate University by now) does so.   (Dkt. No. 55, Attach. 6, at ¶¶ 3-5 [Guiliano Affid.]; Dkt. No. 55, Attach. 3, at ¶¶ 6-7 [Feeney Affid.]; *cf.* Dkt. No. 38,

Attach. 5, at 1-2 [Ex. C to Plf.'s Statement of Facts, referencing the storage building apparently next to the picnic tables].)[59]   Finally, the admissible record evidence establishes that in 1986 the New York State Department of Environmental Conservation was granted a permit to "develop a . . . picnic area" in the Property, and agreed to be "responsible for any repairs, improvements or maintenance work of any kind on the property," yet was dismissed as a party from this action with prejudice on September 1, 2022.   (*Compare* Dkt. No. 58, Attach. 7, at 1 *with* Dkt. Nos. 9, 13.)   As a result, even if the Court were to reach the merits of these aspects of Plaintiff's ADA claim, the Court would (albeit after giving Plaintiff any required notice and reasonable time to respond) likely find that Defendants would be entitled to summary judgment on those aspects. However, because this claim is dismissed without prejudice, the Court need not, and does not, render that ruling.

> **5.    ADA Claim Against Both Defendants Regarding Concrete Boat Launch Ramp and Aluminum Boarding Pier (and Path from Parking Area to Concrete Boat Launch Ramp and Aluminum Boarding Pier)**

Again, even when construed with the utmost of special liberality, Plaintiff's Amended Complaint contains no factual allegations plausibly suggesting an ADA claim regarding what his expert calls the "boat launch ramp" and its "adjacent boarding pier."[60]   Although his Amended Complaint also complains about his "access" to "the general recreation available to non-disabled persons at the Property," because all areas of the Property (which is a park) involve recreation, such a factual allegation does not plausibly suggest a complaint about a boat launch ramp and

---

[59]    *See, supra,* note 17 of this Decision and Order.

[60]    (Dkt. No. 38, Attach. 5, at 1, 3 [containing photographs depicting a concrete boat launch ramp and an adjacent aluminum boarding pier].)

adjacent boarding pier any more than it does a complaint about water fountains and picnic tables. (Dkt. No. 11, at ¶ 28 ["The services that MR. WOODS has not been able to access at the Property are . . . the general recreation available to non-disabled persons at the Property."].) Again, arguing that one's pleading provided only a few illustrative examples of the alleged barriers is not a substitute for investigating and alleging the grounds for an ADA claim.[61] Finally, to the extent that Plaintiff's Amended Complaint complains about "walkways," the Court fails to see how that vague term could plausibly suggest the path from the parking area to the boat launch ramp and adjacent boarding pier when the Amended Complaint fails to complain about the boat launch ramp and adjacent boarding pier.  (*Id.* [complaining about the "walkways"].)

     As a result, for reasons stated above in Part III.A.3. of this Decision and Order, the Court finds that Plaintiff has not stated an ADA claim with regard to these particular barriers.   Plaintiff did not provide Defendants with fair notice of these alleged barriers by subsequently submitting an expert report containing a reference to them.   Plaintiff should have corrected this pleading deficiency in his Amended Complaint but failed to do so.   In any event, even if the Court were to find that Plaintiff has attempted to assert this claim, he has failed to establish standing to do so, because he has neither alleged nor adduced admissible record evidence of an intent to use a boat to fish in the near future.   (*See generally* Dkt. No. 11; Dkt. No. 38.)

     For each of these reasons, the Court dismisses these aspects of Plaintiff's ADA claim without prejudice.   *Katz*, 872 F.3d at 121.

     **B.     Whether Defendant Canal Corporation Should Be Awarded Judgment as a**

---

[61]     *See, supra,* note 50 of this Decision and Order.

**Matter of Law on Plaintiff's ADA Claim and Rehabilitation Act Claim Against It**

**1.     ADA Claim Against Defendant Canal Corporation**

As an initial matter, the Court observes that, for the reasons discussed above in Part III.A. of this Decision and Order, the Court has already found that Plaintiff's ADA claim against Defendant Canal Corporation should be dismissed without prejudice for lack of standing (or, in the alternative, for failure to state a claim) to the extent that the claim regards (1) the floating boarding pier (and path from the parking area to the floating boarding pier), (2) the picnic tables (and path from the parking area to the picnic tables), and (3) the concrete boat launch ramp and aluminum boarding pier (and path from the parking area to the concrete boat launch ramp and aluminum boarding pier).   Moreover, the Court has already found that Plaintiff's ADA claim for money damages against Defendant Canal Corporation should be dismissed without prejudice due to Eleventh Amendment immunity to the extent that the claim regards (1) the parking area and (2) the fishing pier (and path from the parking area to the fishing pier).

As a result, those portions of Defendant Canal Corporation's cross-motion for summary judgment are denied without prejudice as moot.   Furthermore, the only portions of Plaintiff's ADA claim against Defendant Canal Corporation that have survived Part III.A. of this Decision and Order are those portions of his ADA claim against Defendant Canal Corporation that request injunctive and/or declaratory relief with regard to (1) the parking area and (2) the fishing pier (and path from the parking area to the fishing pier).

**a.     Regarding Parking Area**

After carefully considering the matter, the Court finds that genuine disputes of material fact preclude the entry of summary judgment in favor of Defendant Canal Corporation on

Plaintiff's ADA claim against it for injunctive and/or declaratory relief with regard to the parking area, for the reasons stated by both Plaintiff and Defendant City in their opposition memoranda of law, as well as the reasons stated above in Part III.A.1. of this Decision and Order.   *See, supra,* Parts I.C.2.b., I.C.2.c., and III.A.1. of this Decision and Order.

### b.   Regarding Wooden Fishing Pier (and Path from Parking Area to Wooden Fishing Pier, Including Ramp)

After carefully considering the matter, the Court finds that genuine disputes of material fact preclude the entry of summary judgment in favor of Defendant Canal Corporation on Plaintiff's ADA claim against it for injunctive and/or declaratory relief with regard to the wooden fishing pier (and path from the parking area to the wooden fishing pier, including ramp), for the reasons stated by both Plaintiff and Defendant City in their opposition memoranda of law, as well as the reasons stated above in Part III.A.2. of this Decision and Order.   *See, supra,* Parts I.C.2.b., I.C.2.c., and III.A.2. of this Decision and Order.

### 2.   Rehabilitation Act Claim Against Defendant Canal Corporation

### a.   Regarding Parking Area

After carefully considering the matter, the Court finds that genuine disputes of material fact preclude the entry of summary judgment in favor of Defendant Canal Corporation on Plaintiff's Rehabilitation Act claim against it with regard to the parking area, for the reasons stated by both Plaintiff and Defendant City in their opposition memoranda of law, as well as the reasons stated above in Part III.A.1. of this Decision and Order. *See, supra,* Parts I.C.2.b., I.C.2.c., and III.A.1. of this Decision and Order.

### b.   Regarding Wooden Fishing Pier (and Path from Parking Area to Wooden Fishing Pier, Including Ramp)

After carefully considering the matter, the Court finds that genuine disputes of material fact preclude the entry of summary judgment in favor of Defendant Canal Corporation on Plaintiff's Rehabilitation Act claim against it with regard to the wooden fishing pier (and path from the parking area to the wooden fishing pier, including ramp), for the reasons stated by both Plaintiff and Defendant City in their opposition memoranda of law, as well as the reasons stated above in Part III.A.2. of this Decision and Order.   *See, supra,* Parts I.C.2.b., I.C.2.c., and III.A.2. of this Decision and Order.

### c.      Regarding Floating Boarding Pier (and Path from Parking Area to Floating Boarding Pier)

For the reasons stated above in Part III.A.3., Plaintiff's Rehabilitation Act claim against Defendant Canal Corporation is dismissed without prejudice to the extent it regards the floating boarding pier (and path from the parking area to the floating boarding pier).   Because this claim is dismissed without prejudice, the Court need not, and does not, reach the merits of Defendant Canal Corporation's alternative grounds for the dismissal of this claim.

### d.      Regarding Picnic Tables (and Path from Parking Area to Picnic Tables)

For the reasons stated above in Part III.A.4., Plaintiff's Rehabilitation Act claim against Defendant Canal Corporation is dismissed without prejudice to the extent it regards the picnic tables (and path from the parking area to the picnic tables).   Because this claim is dismissed without prejudice, the Court need not, and does not, reach the merits of Defendant Canal Corporation's alternative grounds for the dismissal of this claim.

### e.      Regarding Concrete Boat Launch Ramp and Aluminum Boarding Pier (and Path from Parking Area to Concrete Boat Launch Ramp and Aluminum Boarding Pier)

For the reasons stated above in Part III.A.5., Plaintiff's Rehabilitation Act claim against

Defendant Canal Corporation is dismissed without prejudice to the extent it regards the concrete

boat launch ramp and aluminum boarding pier (and path from the parking area to the concrete

boat launch ramp and aluminum boarding pier).   Because this claim is dismissed without

prejudice, the Court need not, and does not, reach the merits of Defendant Canal Corporation's

alternative grounds for the dismissal of this claim.

### C.   Whether Any Portions of Plaintiff's Rehabilitation Act Claim Against Defendant City Should Also Be Dismissed Without Prejudice for Lack of Standing

For the reasons stated above in Parts III.A.3., III.A.4., and III.A.5. of this Decision and

Order, the Court finds that Plaintiff has failed to allege facts plausibly suggesting and/or adduce

admissible record evidence establishing standing to assert a Rehabilitation Act claim against

Defendant City to the extent that such a claim regards (a) the floating boarding pier (and path

from the parking area to the floating boarding pier), (b) the picnic tables (and path from the

parking area to the picnic tables), and (c) the concrete boat launch ramp and aluminum boarding

pier (and path from the parking area to the concrete boat launch ramp and aluminum boarding

pier).[62]   As a result, those aspects of that claim are dismissed without prejudice.

---

[62]      The Court notes that three independent grounds support its analysis of Plaintiff's standing to assert these portions of his Rehabilitation Act claim against Defendant City.   First, Plaintiff himself raised the issue of standing nominally with regard to *both* his ADA and Rehabilitation Act claims (although he later focused on an argument regarding only his ADA claim).   (Dkt. No. 38, Attach. 1, at 7-13 [Plf.'s Memo. of Law].)   Second, in any event, Defendant City has challenged Plaintiff's standing nominally with regard to both his ADA and Rehabilitation Act claims (although it cites two cases addressing ADA claims and none addressing Rehabilitation Act claims).   (Dkt. No. 55, Attach. 1, at 10-15 [Def. City's Opp'n Memo. of Law].)   Third, in any event, the Court may – and indeed has a duty to – *sua sponte* address the issue of Article III standing at any time under Fed. R. Civ. P. 12(h)(3), because it affects the Court's subject-matter

**ACCORDINGLY,** it is

**ORDERED** that Plaintiff's motion for summary judgment (Dkt. No. 38) is **DENIED**; and it is further

**ORDERED** that Defendant Canal Corporation's cross-motion for summary judgment (Dkt. No. 58) is **GRANTED in part** and **DENIED in part**, as specified above in Part III.B. of this Decision and Order; and it is further

**ORDERED** that the following claims in Plaintiff's Amended Complaint (Dkt. No. 11) are **DISMISSED without prejudice**:

(1) Plaintiff's ADA claim for money damages against Defendant Canal Corporation with regard to (a) the parking area and (b) the fishing pier (and path from the parking area to the fishing pier);

(2) Plaintiff's ADA claim against both Defendants regarding (a) the floating boarding pier (and path from the parking area to the floating boarding pier), (b) the picnic tables (and path from the parking area to the picnic tables), and (c) the concrete boat launch ramp and aluminum boarding pier (and path from the parking area to the concrete boat launch ramp and aluminum boarding pier); and

(3) Plaintiff's Rehabilitation Act claim against both Defendants regarding (a) the floating boarding pier (and path from the parking area to the floating boarding pier), (b) the picnic tables (and path from the parking area to the picnic tables), and (c) the concrete boat launch ramp and aluminum boarding pier (and

jurisdiction.

path from the parking area to the concrete boat launch ramp and aluminum

boarding pier);

**ORDERED** that the following claims in Plaintiff's Amended Complaint (Dkt. No. 11)

**SURVIVE** this Decision and Order:

(1) Plaintiff's ADA claim against Defendant City with regard to (a) the

parking area and (b) the fishing pier (and path from the parking area to the fishing

pier);

(2) Plaintiff's ADA claim for injunctive and/or declaratory relief against

Defendant Canal Corporation with regard to (a) the parking area and (b) the

fishing pier (and path from the parking area to the fishing pier); and

(3) Plaintiff's Rehabilitation Act claim against both Defendants with

regard to (a) the parking area and (b) the fishing pier (and path from the parking

area to the fishing pier); and it is further

**ORDERED** that Plaintiff is directed to forward a written settlement demand to

defendants no later than **July 25, 2024,** and the parties are directed to thereafter engage in

meaningful settlement negotiations. The parties are directed to jointly file, on or <u>**August 16,**</u>

<u>**2024**</u>, regarding their settlement discussions and if a settlement conference would be beneficial

or a jury trial date should be scheduled.


Dated: July 11, 2024
      Syracuse, New York

Glenn T. Suddaby
U.S. District Judge

51