UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TRAVIS WOOODS,<br><br>                              Plaintiff,<br><br>– against –<br><br>CITY OF ROME, ET AL,<br><br>                             Defendants. | **STIPULATION OF SETTLEMENT, GENERAL RELEASE, AND ORDER OF DISMISSAL**<br><br>6:22-CV-628 (GTS/MJK) |

STIPULATION OF SETTLEMENT, GENERAL RELEASE, AND ORDER OF DISMISSAL ("Settlement Agreement") made by and between Plaintiff, Travis Woods ("Plaintiff") and Defendants, City of Rome ("the City") and New York State Canal Corporation ("NYSCC") ("Defendants") (Plaintiff and Defendants, collectively, "the Parties") as of November __, 2024:

WHEREAS, Plaintiff filed a First Amended Complaint on or about September 1, 2022 (ECF No. 11), alleging claims against Defendants pursuant to Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131, *et seq.*, and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, *et seq.*; and

WHEREAS, the claims and allegations asserted in the above-captioned action, together with all related filings and proceedings, constitute "the Action"; and

WHEREAS, Defendants expressly deny any wrongful conduct or liability, or violation of any federal, state, or local statute, ordinance, or law in the Action whatsoever; and

WHEREAS, the Parties desire to fully resolve the claims between them and any and all

other disputes, whether known or unknown, without further litigation or proceedings before any court or other agency, and without admission of fault or liability; and

WHEREAS, no party hereto is an infant or incompetent person for whom a committee has been appointed, and no person not a party to this Settlement Agreement has an interest in the subject matter of the Action;

NOW, THEREFORE, in consideration of the mutual promises, covenants, representations, and other consideration contained in this Settlement Agreement, the Parties hereby stipulate and agree, and the Court orders, as follows:

1. **Dismissal of the Action with Prejudice.** The Action and all claims asserted therein are hereby dismissed, with prejudice, pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii) and without payments, attorneys' fees, costs, disbursements, or expenses in excess of the amounts specified in Paragraph 2 of this Settlement Agreement.

2. **Payment[s] to Plaintiff.** For and in consideration of Plaintiff's execution of this Settlement Agreement, Plaintiff's agreement to be bound by its terms, and the undertakings as set forth herein including, but not limited to, the dismissal of the Action with prejudice and other good and valuable consideration, the sufficiency of which is hereby acknowledged, the following payments shall be made:

   a. The City of Rome shall pay to Plaintiff the sum of Twenty Thousand Dollars ($20,000.00) in full and complete satisfaction of any and all claims, allegations, or causes of action for compensatory damages. The foregoing payment shall be made payable to "Travis Woods" and mailed to Bizer & DeReus, 3319 St. Claude Ave, New Orleans, LA.

   b. The New York State Canal Corporation shall pay to Plaintiff's attorneys,

Bizer & DeReus, the sum of Ten Thousand Dollars ($10,000.00), in full and complete satisfaction of any and all claims, allegations, or causes of action for attorneys' fees, costs, disbursements, and expenses incurred by Plaintiff or Plaintiff's attorneys for any and all counsel who have at any time represented or assisted Plaintiff in the Action, or in connection with any other proceeding, and any other claim or action arising from, related to, based upon, or alleging any of the acts, transactions, occurrences, or omissions asserted or purportedly asserted in the Action. The foregoing payment shall be made payable to "Bizer & DeReus" and mailed to 3319 St. Claude Ave, New Orleans, LA.

c.  In addition to the above payments, the following injunctive relief shall be provided by the City of Rome:

The City agrees to do the following work to at the Property (the "Work") within twenty-four (24) months from the execution of this Stipulation of Settlement:

A. Pave and stripe a portion of the parking lot adjacent to the fishing platform for a minimum of eight (8) vehicles that complies with ADAAG 502, including ADAAG 302 that requires that ground surfaces be "stable, firm, and slop resistant." Also, ensure that there is at least one "Van Accessible" parking spot as per ADAAG 208.2.4.

B. As per Plaintiff's Expert Report (attached hereto as Exhibit "A"), create an accessible route (as defined by ADAAG 402) connecting the parking area to:

Item Number 8, the fishing platform.

The Parties agree that this can NOT be achieved by using so-called "ADA compliant stone dust gravel."

3.  **Responsibility for Taxes.** It is understood and agreed that any taxes, or interest or

penalties on taxes, which may attach to the payment(s) specified in Paragraph 2 of this Settlement Agreement, by operation of law or otherwise, shall be the sole and complete responsibility of Plaintiff and/or Plaintiff's attorneys, and that Plaintiff and/or Plaintiff's attorneys shall have no claim, right or cause of action against Defendants or the State of New York (including, but not limited to, any and all present and former agencies, departments, divisions, subdivisions, subsidiaries, administrators, principals, officers, employees, directors, members, agents, attorneys, insurers, and assigns, whether in an individual or official capacity) on account of such taxes, interest or penalties.

4.    **Responsibility for Liens and Setoffs.** It is understood and agreed that any liens, setoffs, deductions, or recoupments of any kind (including, but not limited to, any and all workers' compensation, tax, Medicare, Medicaid, unemployment compensation or benefits, or child support liens) which may attach to the payments specified in Paragraph 2 of this Settlement Agreement, by operation of law or otherwise, shall be the sole and complete responsibility of Plaintiff and/or Plaintiff's attorneys, and that Plaintiff and/or Plaintiff's attorneys shall have no claim, right or cause of action against Defendant or the State of New York (including, but not limited to, any and all present and former agencies, departments, divisions, subdivisions, subsidiaries, administrators, principals, officers, employees, directors, members, agents, attorneys, insurers, and assigns, whether in an individual or official capacity) on account of such taxes, interest or penalties.

5.    **General Release.** For and in consideration of the payment of the settlement amounts referenced in Paragraph 2 of this Settlement Agreement and other good and valuable consideration, the sufficiency of which is hereby acknowledged, and except for

the rights and obligations set forth in this Settlement Agreement, Plaintiff, on behalf of himself, his heirs, executors, administrators, successors, and assigns (collectively, "the Releasing Parties"), hereby releases and forever discharges Defendants, City of Rome and New York State Canal Corporation, and the State of New York, together with their present and former agencies, departments, divisions, subdivisions, subsidiaries, administrators, principals, officers, employees, directors, members, agents, attorneys, insurers, and assigns, whether in an individual or official capacity, or any of them, or all of them (collectively, "the Released Parties") from all manner of claims, actions, proceedings, suits, grievances, administrative charges, injuries, debts, obligations, dues, sums of money, accounts, contracts, agreements, promises, damages, judgments, and demands whatsoever, direct or indirect, known or unknown, discovered or undiscovered, that the Releasing Parties ever had, now has, or shall or may have in the future against some, any, or all of the Released Parties, related to or arising out of the acts, transactions, occurrences, or omissions which are described, alleged, or contained in the Action, including any and all claims under the Rehabilitation Act of 1973, 29 U.S.C. § 794 *et seq.* and/or the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.*; or any other claims, causes of action, rights, or administrative charges for relief, whether for moneys owed, equitable relief, costs, fees, or other expenses, including attorney's fees. Plaintiff is not waiving or releasing any nonwaivable statutory protections, or waiving or releasing any claims that may arise after execution of this Settlement Agreement.

6. **No Other Action or Proceeding.** Plaintiff represents that he has not commenced, maintained, or prosecuted any action, charge, complaint, grievance, or proceeding of any

kind that is still pending against the Released Parties, on their own behalf or on behalf of any other person and/or on behalf of or as a member of any alleged class of persons, that none of the foregoing is currently pending in any court or before any administrative or investigative body or agency, and acknowledges that this representation constitutes a material inducement for Defendants to enter into this Settlement Agreement.

7.   **No Prevailing Party.** Neither Plaintiff nor Defendants shall be deemed a "prevailing party" for any purpose including, but not limited to, any statutory or contractual claim based upon "prevailing party" status with respect to the Action.

8.   **No Admission of Liability.** It is understood and agreed that any actions taken or payments made pursuant to this Settlement Agreement are made solely to avoid the burdens and expense of protracted litigation, and that this Settlement Agreement and the actions taken or payments made pursuant hereto are not to be construed as constituting any determination on the merits of any claims in the Action or as constituting any admission of wrongdoing or liability on the part of Defendants or the State of New York (including, but not limited to, any and all present and former agencies, departments, divisions, subdivisions, subsidiaries, administrators, principals, officers, employees, directors, members, agents, attorneys, insurers, and assigns, whether in an individual or official capacity). Nothing contained in this Settlement Agreement shall be deemed to constitute a policy, practice, or custom of Defendants or the State of New York (including, but not limited to, any and all present and former agencies, departments, divisions, subdivisions, subsidiaries, administrators, principals, officers, employees, directors, members, agents, attorneys, insurers, and assigns, whether in an individual or

official capacity).

9. **No Precedential Value.** This Settlement Agreement shall not in any manner be construed as determinative of the issues or claims raised in the Action or any other proceeding, and shall have no precedential value. In addition, notwithstanding the provisions of any paragraph herein, this Settlement Agreement shall not bind or collaterally estop Defendants or the State of New York (including, but not limited to, any and all present and former agencies, departments, divisions, subdivisions, subsidiaries, administrators, principals, officers, employees, directors, members, agents, attorneys, insurers, and assigns, whether in an individual or official capacity) in any pending or future actions or proceedings in which the same or similar issues are raised, from defending any and all issues raised in said actions or proceedings, or from advancing any and all available defenses.

10. **Authority.** Each signatory to this Settlement Agreement hereby represents and warrants that they have the requisite authority to enter into this Settlement Agreement and have not previously assigned or transferred any rights or interests with respect to the matters covered by this Settlement Agreement.

11. **Voluntary Agreement.** Plaintiff represents that he has carefully read and fully understands all provisions of this Settlement Agreement, including the General Release. Plaintiff represents that he has executed and delivered this Settlement Agreement voluntarily after being fully informed of its terms, contents, and effect, and acknowledges that he understands its terms, contents, and effect. Plaintiff acknowledges that no compromise or representation of any kind, other than as set forth or referred to

herein, has been made to any party or anyone acting on behalf of any party.

12. **Negotiated Agreement.** The Parties acknowledge that each party has cooperated in the drafting and preparation of this Settlement Agreement. The language in all parts of this Settlement Agreement shall be in all cases construed according to its fair meaning and not strictly for or against any party.

13. **Binding Effect on Successors and Assigns.** The terms and conditions of this Settlement Agreement shall inure to the benefit of, and be binding upon, the successors and assigns of each party hereto.

14. **Entire Agreement.** This Settlement Agreement constitutes the entire agreement between the Parties hereto pertaining to the subject matter hereof, and supersedes and embodies, merges and integrates all prior and current agreements and understandings of the parties hereto, whether written or oral, with respect to the subject matter of this Settlement Agreement, and may not be clarified, modified, changed, or amended except in a writing duly executed by the parties hereto or an authorized representative of the parties hereto.

15. **Governing Law.** The terms of this Settlement Agreement shall be governed by, and construed in accordance with, the laws of the State of New York applicable to contracts to be performed wholly within the State of New York, except to the extent that federal law may apply to Plaintiff's release and waiver of federal claims pursuant to Paragraph 5 of this Settlement Agreement.

16. **Severability.** If any provision of this Settlement Agreement shall be held by a court of competent jurisdiction to be invalid, void, or unenforceable in whole or in part,

such decision shall not invalidate the remaining portion or affect its validity.

17.     **Headings.** The headings contained in this Settlement Agreement are for convenience of reference only and are not a material part of this Settlement Agreement.

18.     **Counterparts.** This Settlement Agreement may be executed in several counterparts, each of which shall be deemed an original and which, taken together, shall constitute one and the same instrument.

19.     **Submission to the Court.** This Settlement Agreement shall be submitted without further notice to the Court to be "So Ordered."

WHEREFORE, the Parties hereto acknowledge that they have read this Settlement Agreement and accept and agree to the provisions contained herein and have each executed this Settlement Agreement to be effective on the day and date first above written.

Dated: November ____, 2024
11 / 25 / 2024

_____
TRAVIS WOODS

Dated: November 26, 2024
New Orleans, LA

BIZER & DEREUS
*Attorneys for Plaintiff*
By: _____
Andrew Bizer, Esq.
3319 St. Claude Ave
New Orleans, LA 70117
504-619-9999
andrew@bizerlaw.com

Dated: December 12, 2024
       Rome, New York
By:

_____
Name:
Title:

CITY OF ROME
By: _____
Name:
Title: Gerard F. Feeney
       Corporation Counsel

Dated: November 30, 2024
       Rome, New York

LAW OFFICE OF KEVIN G. MARTIN, PC
*Attorneys for Defendant City of Rome*
By: _____
Kevin G. Martin, Esq.
1600 Genesee St.
Utica, NY 13502
315-507-3765
kmartinlaw@gmail.com

Dated: November ____, 2024
       Albany, New York

NEW YORK STATE CANAL CORPORATION
By:

_____
Name:
Title:

Dated: November ____, 2024
       Albany, New York

LETITIA JAMES
Attorney General
State of New York
*Attorney for Defendant NYSCC*
By:

_____
Jennifer J. Corcoran
Assistant Attorney General
The Capitol
Albany, NY 12224
518-776-2581
Jennifer.Corcoran@ag.ny.gov

Dated: November ____, 2024  
Rome, New York

CITY OF ROME  
By: _____  
Name:  
Title:

Dated: November ____, 2024  
Rome, New York

LAW OFFICE OF KEVIN G. MARTIN, PC  
*Attorneys for Defendant City of Rome*  
By: _____  

Kevin G. Martin, Esq.  
1600 Genesee St.  
Utica, NY 13502  
315-507-3765  
kmartinlaw@gmail.com

Dated: ~~November~~ December 5, 2024  
Albany, New York

NEW YORK STATE CANAL CORPORATION  
By: /s/ *[signature]*  
Name: Michael P. McCarthy  
Title: Assistant General Counsel

Dated: ~~November~~ December 11, 2024  
Albany, New York

LETITIA JAMES  
Attorney General  
State of New York  
*Attorney for Defendant NYSCC*  
By: /s/ *[signature]*  

Jennifer J. Corcoran  
Assistant Attorney General  
The Capitol  
Albany, NY 12224  
518-776-2581  
Jennifer.Corcoran@ag.ny.gov

Dated: February 5, 2025  
Syracuse, New York

SO ORDERED:

/s/ *[signature]*  
Glenn T. Suddaby  
U.S. District Judge

# Exhibit A

Doc ID: 69d29a0858d8805e

# ACCESSIBILITY AUDIT REPORT

June 29, 2023

Andrew D. Bizer
Bizer & DeReus
3319 St. Claude Avenue
New Orleans, LA 70117

**Re: Woods v. City of Rome, et al.**

On Thursday June 22, 2023, KMA Access Planner Mark Simonin, at my direction and under my supervision, performed an accessibility audit of the parking, exterior routes, boat launch ramps, and other public-use facilities at the City of Rome Fishing Access Site in Rome, NY. The purpose of this audit was to identify conditions that do not comply with the Americans with Disabilities Act (ADA). I understand that the facility is currently the subject of an ADA complaint in Northern District Court of New York, Case No: 6:22-cv-628 (GTS/ATB), a copy of which has been provided to me by your law firm in its capacity as Plaintiff counsel.



ARCHITECTURE
+ACCESSIBILITY
ONE BRIDGE ST
NEWTON MA
02458-1132
KMACCESS.COM
617.641.2802

## Property Description

The City of Rome Fishing Access Site consists of an unstriped parking area with a deteriorated asphalt and compacted gravel surface, a small concrete pad with two picnic tables, a boat launch ramp with an adjacent boarding pier, a floating boarding pier, an elevated fishing platform, and a 1-story maintenance/ storage building. The facility is currently not identified by any signage at its entrance along Route 46 (Muck Road), but previous imagery on-line shows a sign that reads, "City of Rome Fishing Access Site" and includes the emblem of the New York State Department of Environmental Conservation. A local resident with whom Mr. Simonin spoke on site indicated that the floating boarding pier and the 1-story maintenance/ storage building were operated by a local collegiate rowing team and not the City, but there was no signage or other information prohibiting use of this boarding pier by the general public.

## Findings and Opinions

The findings of Mr. Simonin's audit, along with my opinions on the compliance of the facility with the ADA accessibility guidelines based on his audit, are enumerated in the table below. Mr. Simonin was provided with access to all public-use elements of the facility by the City of Rome on the day of the audit. The weather was moderate, and there were no extenuating circumstances to limit the accuracy or completeness of his audit. After Mr. Simonin's audit, I had the opportunity to carefully review his findings

and to ask him for any necessary clarifications. Thus, my opinions are based upon a reasonable degree of certainty derived from my review of the audit findings and my expertise in the application of federal accessibility requirements in places of public accommodation. As further facts, evidence, or other information is presented, I reserve the right to amend and/or modify the contents of this memo.

| **PARKING AREA** | | |
|---|---|---|
| **#** | **Barrier** | **Photograph** |
| 1. | **Parking**<br>The parking area lacks any designated accessible parking spaces. The number of spaces required will depend on the number of overall spaces provided.<br>*2010 ADAS 208.1* | |
| **PICNIC AREA** | | |
| 2. | **Accessible Route to Picnic Tables**<br>The picnic tables are not located on an accessible route due to the grass and gravel surface.<br>*2010 ADAS 206.2.2* | |
| 3. | **Picnic Table Knee Space**<br>The picnic tables lack the required knee and toe clearance.<br>*2010 ADAS 902.2* | |

| | **FLOATING BOARDING PIER** | |
|---|---|---|
| 4. | **Accessible Route to Boarding Pier**<br><br>The floating boarding pier is not located on an accessible route due to the grass and gravel surfaces, 22% running slope leading to the pier, and 8-½" change in level at the start of the gangway.<br><br>*2010 ADAS 206.1* |  |
| 5. | **Boarding Pier Gangway**<br><br>The running slope of the gangway surface is greater than 8.3%, @ 10.2% at entry area.<br><br>*2010 ADAS 403.3*<br><br>The gangway lacks the required handrails and edge protection on both sides.<br><br>*2010 ADAS 405.8, 405.9* |  |
| | **BOARDING PIER AT BOAT LAUNCH RAMP** | |
| 6. | **Accessible Route to Boarding Pier**<br><br>The boarding pier adjacent to the boat launch ramp is not located on an accessible route due to the deteriorating pavement and compacted gravel surface.<br><br>*2010 ADAS 206.2.2* |  |
| 7. | **Boarding Pier Gangway**<br><br>The running slope of the gangway surface is greater than 8.3%, @ 10.2%.<br><br>*2010 ADAS 403.3*<br><br>The gangway lacks the required handrails and edge protection on both sides.<br><br>*2010 ADAS 405.8, 405.9*<br><br>The opening in the gangway where it meets the ground is >1/2", @ 3-½".<br><br>*2010 ADAS 302.3* |  |

| | FISHING PLATFORM | |
|---|---|---|
| 8. | **Accessible Route to Fishing Platform**<br><br>The fishing platform is not located on an accessible route due to the deteriorating pavement and compacted gravel surface.<br><br>*2010 ADAS 206.2.2*<br><br>The ramp up to the fishing platform is deteriorating and cracked, creating abrupt changes in level up to 3-½" high.<br><br>*2010 ADAS 303.2*<br><br>The ramp up to the fishing platform has running slopes >8.3%, @ 11.2%.<br><br>*2010 ADAS 405.2* |  |
| 9. | **Fishing Platform Surface**<br><br>Openings in the platform surface between decking are >1/2", up to 1-3/8".<br><br>*2010 ADAS 302.3*<br><br>The platform surface is not level, with slopes up to 3% in some areas.<br><br>*2010 ADAS 305.2* |  |
| | End of table. | |

### Statement of Qualifications

I am a licensed architect who has spent the past fifteen years working exclusively in the areas of accessibility planning and Universal Design. I have a Bachelor of Arts in Architectural Studies from Brown University and a Master of Architecture from Rhode Island School of Design. I am the Managing Principal at KMA, LLC, where I direct accessibility and Universal Design-related consulting projects, including Americans with Disabilities Act (ADA) and Fair Housing Act (FHA) litigation. I am a National Council of Architectural Registration Boards (NCARB) certified architect registered in the state of Massachusetts and a member of the American Institute of Architects (AIA) and Boston

Society of Architects (BSA), where I co-chaired the Access Committee for approximately seven years. I am a Certified Access Specialist (CASp) certified by the California Division of the State Architect.

I have been accepted as an expert in accessibility in the Southern District Court of New York, Eastern District Court of Pennsylvania, Northern District Court of Illinois Eastern Division, Northern District Court of California, and Suffolk County (MA) Superior Court. I have presented at numerous professional conferences organized by the Boston Society of Architects, Boston Society of Landscape Architects, American Institute of Architects, American Society of Landscape Architects, Society for College and University Planning, Environments for Aging, and Leading Age on topics in accessibility and Universal Design. I am an adjunct faculty member in the Department of Architecture at the Massachusetts College of Art and Design, where for the past 10 years I have taught a seminar on accessibility and urban planning. I have been a guest lecturer and/or critic in the schools or departments of architecture at the Boston Architectural College, Wentworth Institute of Technology, Northeastern University, Harvard Graduate School of Design, Massachusetts Institute of Technology, Rhode Island School of Design, Tulane University, Louisiana State University, the Savannah College of Art and Design, Ion Mincu University of Architecture and Urbanism in Bucharest, Romania, and the Moscow Institute of Architecture and Moscow State University of Civil Engineering in Moscow, Russia.

**Prior Testimony and Publications**

During the past four years, I have testified as an expert in a deposition or at trial in the following matters:

> Westchester Independent Living Center, Inc., et al. v. State University of New York, Purchase College, et al., Southern District of New York, No. 16-cv-5949(CS)(JCM)
>
> Liberty Resources, Inc., et al. v. The City of Philadelphia, Eastern District Court of Pennsylvania, No. 19-cv-03846-HB
>
> Trinity Sober Living, LLC and United States of America v. Village of Hinsdale, Illinois, Northern District Court of Illinois Eastern Division, Nos. 1:19-cv-7321 and 1:20-cv-06959

During the past ten years, I have not authored any publications of note.

**Statement of Compensation**

KMA, LLC was paid a flat fee of $3,800 for the preparation of this report and reimbursed for any direct expenses incurred and 110% of the cost:

Additional expert services provided in this matter will be compensated at KMA's standard hourly rates:

| | |
|---|---|
| Principal | $395 |
| Access Planner | $185 |
| Administration | $135 |

Testimony and/or deposition will be compensated at a rate of $495/hour.

Thank you,

*[signature]*

Josh Safdie, AIA, NCARB
Managing Principal